PEARL MILLER, *et vir*, v. E. H. CARR, as Executor of the Last Will and Testament of ALONZO A. CARR, Deceased.

193 So. 45
Division A
Opinion Filed January 9, 1940
Rehearing Denied January 26, 1940

*George Palmer Garrett* and *Ellis F. Davis,* for Plaintiffs in Error;

*W. J. Steed* and *Lawrence Rogers,* for Defendants in Error.

BUFORD, J.—This is the second appearance of this case here. See Miller v. Carr, 137 Fla. 114, 188 Sou. 103.

On the going down of the mandate, plaintiff filed fourth amended declaration. Demurrer thereto was sustained and judgment entered.

The law of the case was established in the opinion and judgment, *supra.* In that opinion we held:

"It is not alleged in either of the first two counts that the decedent had by a proper instrument in writing severed his

ownership of the land and of the oil therein, if that can be done; and as at the death of decedent, oil that had not then in fact been severed from the lands was a part of the realty, and descended to his heirs, and could not pass by oral contract to devise; consequently counts 1 and 2 allege a cause of action only if interpreted and applied to limit the claimed royalties to those due for oil severed from the lands prior to the death of the decedent. See United States v. Noble, 237 U. S. 74, text page 80, 35 S. Ct. 532, 59 L. Ed. 844."

To meet this holding, the plaintiff alleged in the fourth amended declaration:

"(e) On the 20th day of March, A. D. 1936, when Alonzo A. Carr made the contract referred to in paragraph sub-section (a) above, there was outstanding, unexpired and in full force and effect, a lease in writing, dated November 8, 1916, on certain real property, located in Triumph Township, Warren County, State of Pennsylvania, the fee simple title to which was on November 8, 1916, vested in Alonzo A. Carr and David Carr. A true copy of said lease dated the 8th of November, 1916, is attached hereto and marked Exhibit No. 1, and prayed to be taken as a part hereof. Subsequent to the making of said lease, and prior to the 20th day of March, A. D. 1936, David Carr quit-claimed his undivided one-half interest in the premises to Alonzo A. Carr. On the 20th of March, A. D. 1936, Alonzo A. Carr was the owner of the entire fee simple title to said tract upon which said lease was made. On the 20th day of March, A. D. 1936, the said Alonzo A. Carr was receiving, and for years had been receiving, the sum of approximately $100.00 a month or more as royalties from said lease. It was the said royalties from said lease to which Alonzo A. Carr referred in said contract with plaintiff, and it was

the said real property in Pennsylvania upon which said lease existed to which he referred in said contract with plaintiff as the oil property in Pennsylvania. The parties to said contract of March 20th, 1936, bargained with reference to said one-half of the said royalties from the said oil property. On March 20th, 1936, and at the time of the institution of this suit, the aforesaid lease was an existing lease on said oil property in Pennsylvania and in full force and effect, and royalties were then being paid and at the time of the institution of this suit, were still being paid on oil extracted under said lease.

"(f) Under and by virtue of the lease dated March 20th, 1936, a copy of which is attached hereto and marked Exhibit No. 1, and prayed to be taken as a part hereof, the petroleum and gas, the exclusive right of drilling and operating for which was granted by said lease, was constructively severed from the ownership of the land, and became and was personal property belonging to the lessee, subject to the payment of rent, consisting of the payment of one-eighth of the oil produced by any well or wells drilled on said land, and one-eighth of all the products obtained from any gas obtained from said land, whether in the form of gasoline or any other marketable product. And continuously thereafter until the institution of this suit the lease was in full force and effect and the lessee had not defaulted thereunder and at the time of the oral promise made by Alonzo A. Carr as aforesaid and at the time of his death and at the time of the institution of this suit, and at all times from the date of said lease until the date of the institution of this suit, all of said petroleum and gas and the products thereof were and constituted personal property constructively severed by the making, execution and delivery of said lease."

The pertinent provisions of the lease are:

"That the said part........ of the first part, for the consideration of the covenants and agreements hereinafter mentioned.; and in further consideration of the sum of One Dollar in hand paid by the said part........ of the second part to the part.,....... of the first part, the receipt whereof is hereby acknowledged, the said parties of the first part have granted, devised and let unto the party of the second part his heirs or assigns, for the purpose and with the exclusive right of drilling and operating for Petroleum and Gas for, during and until the full term of one year next ensuing the day and year above written, with the right of renewal thereafter, so long as oil or gas shall continue to be found in paying quantities, ALL that certain tract of land, situated in Triumph Township, Warren County and State of Pennsylvania bounded and described as follows:"

Then follows description of the lands. Then the lease provides:

"The party of the second part to drill on said described lot at least four (4) wells, the first of which shall be commenced within seven months (7) from the execution of this lease, cessation of work or the ordinary operations for producing oil on said land by the said party of the second part, his executors, administrators or assigns, at any time during the continuance of this lease, for a period of thirty days consecutively, shall work absolute forfeiture of this lease and the privileges and easements hereby granted, and the said lease shall become null and void without any reservation, limitation or exception whatsoever. It is expressly understood that the party of the second part shall complete at least four wells (4) by the 8th day of September, 1917, and after that he shall complete not less than six (6) more wells within the following year. It is further agreed that if

the production will justify it the party of the second part shall drill on said lot at least four (4) wells each year until the producing territory is exhausted. It is agreed that each well *well* shall hold five (5) acres surrounding it while operated and when the party of the second ............. fails to operate as above agreed he shall forfeit the ba*ll*ance undrilled said party of the second part his heirs or assigns, further covenants and agrees to deliver to the parties of the first part their heirs or assigns one eighth (1/8) of all the oil produced by any and all well or wells drilled on said land, said oil to be delivered to the credit of said parties of the first part, their heirs or assigns, in marketable conditions, to such accessible pipe line company as shall be designated and approved by the said parties of the first part, the party of the second part agrees to deliver to the parties of the first part one eighth (1/8) of all the products obtained from any gas obtained from said lot whether in the form of gasoline or any other marketable product.

"The party of the second part covenants and agrees at all times to permit the parties of the first part, or agent, to enter the premises for the purpose of inspecting the operations, examining the books, and ascertaining how much oil has been pumped, or other product obtained; and also to continue with due diligence and without delay to prosecute the business to success or abandonment; and if successful, to prosecute the same without interruption for the common benefit of the parties aforesaid. The party of the second part agrees to pay all excess of Taxes levied on said lot by reason of its operations thereon. It is expressly agreed between the parties hereto that the right of way, passage and water courses through, over, upon or under said lot from any other lot or lots in said tract, is hereby reserved, and that the parties of the first part, or legal

representatives, shall have the right to pass to and from the lot to lay pipe to conduct oil, gas or water to, from, over or under said lot hereby leased, the road or passage and water course to be laid out by the parties of the first part so as to occasion as little inconvenience as practicable to the party of the second part, not inconsistent with the general advantage of the lessees of other lots.

"The said party of the first part is to fully use and enjoy the said premises for the purpose of tillage, except such part as shall be necessary for said operating purposes, and a right of way over and across the said premises, to the place or places of operating. It is further agreed as aforesaid, that upon the termination of this lease, either by its limiations or otherwise, the said party of the second part, his executors, administrators or assigns shall have the right to remove all tools, engines and machinery which he may have placed upon the said premises, provided that all the stipulations and covenants herein contained shall have been by him or them duly observed and fulfilled up to and at the time of such removal, but not otherwise.

"It is moreover expressly agreed by and between the parties of this instrument that a failure of the said party of the second part, heirs or assigns, to comply with any one of the reservations, conditions or agreements contained in the within instrument, which by its terms are to be done, observed, kept and performed by the party of the second part, shall work a forfeiture of the rights hereby granted; and the parties of the first part, their heirs and assigns, may re-enter upon the said lot of ground as effectually, and to all intents and purposes as if this lease had not been made, without further notice, using such force as may be necessary thereto, or without accounting or repaying to the said party of the second part for any money or other con-

siderations by him paid, laid out or expenses in the premises."

This sort of a lease has been before the courts of this country.

Plaintiff in error contends that under the terms of the lease contract there was a constructive severance of the oil "in place" and that title to the oil passed to the lessee and should be treated and considered the same as if it had been taken from the land before the death of Carr.

As we construe the lease, it was a contract for the use of the realty for the purposes therein specified. It passed the right to produce oil from the land and nothing more.

In Kelly v. Keys, 213 Pa. 295, 62 Atl. 911, 110 Am. St. Rep. 547, a similar lease was under consideration and the Court held:

"The defendant Keys being the owner of a certain tract of land in Washington County, by instrument in writing, duly executed and acknowledged, granted to Kelly, the plaintiff, the exclusive right to mine and produce therefrom petroleum and natural gas, with possession of so much of the land as might be necessary for such purposes, for a term of two years subject to certain conditions and stipulations which do not here call for recital. Kelly never exercised any rights under the grant and never entered into possession of any part of the premises. Subsequently Keys, claiming that by reason of a default Kelly had forfeited his rights under the grant, conveyed a like right in the premises to C. D. Greenlee and the Southern Oil Company, the other defendants who proceeded to explore the property and succeeded in producing oil therefrom in paying quantity. Kelly, averring compliance on his part with all the conditions and stipulations of the grant under which he claimed, and denying a forfeiture, brought this action of ejectment

against the defendants to compel surrender of possession to himself. The action resulted in a verdict for the plaintiff, subject to the decision of the court on a question reserved, viz., whether ejectment in such case would lie. Upon consideration, judgment was rendered upon the reserved point in favor of the plaintiff. The assignment of error that relates to the action of the court on this point is the only one that calls for present consideration.

"In reaching his conclusion on the point reserved, the learned judge gave full recognition to the binding authority of Funk v. Haldeman, 53 Pa. 229, and the cases that follow it, wherein it is held that the grant of exclusive privileges to go on land for the purpose of prospecting for oil, the grantor to receive part of the oil mined, as in this case, does not vest in the grantee any estate in the land or oil, but is merely a license or grant of an incorporeal hereditament. This court has found frequent occasion to assert its continued adherence to the doctrine of these cases. Only recently, in the case of Hicks v. American Natural Gas Company, 207 Pa. 570, 57 Atl. 55, 65 L. R. A. 209, it reasserted it without qualification. Once it was determined that the subject of such a grant was an incorporeal hereditament, and not an estate in the land or oil, it logically and necessarily resulted that it would not support an action in ejectment. And this view has been steadily adhered to. In no case has ejectment been sustained under such a grant, except where possession had been acquired by the grantee and he had been wrongfully disseised. In the present case disseisin was not, and could not be, asserted. Nor could it be contended that the instrument under which Kelly claimed, though spoken of as a lease and so denominated in the instrument itself, is in point of fact and law a lease, notwithstanding it allows possession of so much of the

surface of the premises as may be necessary to conduct mining operations. This much will be implied without express stipulation; and the stipulation, being expressed, in no way distinguishes this from the cases where such an instrument is held to be merely a grant or license. The court below put no other construction on this, so long as it concerned no one but grantor or grantee; but because the defendants, holding under a subsequent lease, being in possession, had produced and were producing oil in paying quantity, he reached the conclusion that what had been the grant of an incorporeal hereditament, now that the oil had been found and was being produced, was an estate in the land, since oil was a mineral, and therefore part of the land, and that Kelly, being entitled to be put into possession of so much of the estate, ejectment could be brought for such purpose.

"This line of argument overlooks the very consideration on which the authorities cited rest. In no case is it held that the grant of an exclusive right to mine for and produce oil, though it be a mineral, is a sale of the oil that may afterward be discovered. When under such a grant oil has been discovered, it is the grantee's right to produce it and sever it from the soil. So much as is thus severed belongs to the parties entitled under the terms of the grant, not as any part of the real estate, however, but as a chattel, and only so much as is produced and severed passes under the grant." * * *

See also Arrington v. United States Royalty Company, 188 Ark. 270, 65 S. W. (2nd) 36, 90 A. L. R. 765, and annotations, and United States v. Noble, 237 U. S. 74, 59 L. Ed. 844..

So, on authority of our opinion herein, *supra,* the judgment is affirmed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.