309 So.2d 39 (1975)
J. Ed STRAUGHN, As Executive Director of the Department of Revenue, State of Florida, Appellant,
v.
AMOCO PRODUCTION COMPANY, a Corporation, et al., Appellees.
No. 73-701.
District Court of Appeal of Florida, Second District.
February 12, 1975.
Rehearing Denied March 26, 1975.
*40 Robert L. Shevin, Atty. Gen., E. Wilson Crump, II, and James D. Whisenand, Asst. Attys. Gen., Tallahassee, for appellant.
Wofford H. Stidham of Holland & Knight, Bartow, for appellee Amoco Production Co.
Peter J. Winders and Ruth B. Himes, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, on behalf of un-named oil companies, amicus curiae.
McNULTY, Chief Judge.
In this declaratory judgment action we are called upon to determine whether a leasehold interest in oil, gas and minerals is subject to ad valorem real property taxation under § 193.481, F.S. 1971. In reliance upon the Miller v. Carr[1] cases, the trial court held that such a lease merely granted an incorporeal hereditament, i.e., an inchoate interest in unsevered personalty, was simply a contractual "license to explore" and therefore does not constitute a taxable possessory interest in real property. He accordingly ruled in favor of plaintiff-appellee Amoco and this appeal ensued.
To a degree the trial court was correct as far as he went, but had he made a closer analysis we think he would have reached a different conclusion. We must therefore reverse.
We begin with the pertinent statute. Section 193.481(1), F.S. 1971, reads in material part as follows:
"Whenever the mineral, oil, gas, and other subsurface rights in or to real *41 property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee...." (Italics ours.)
The lease herein, one common in the industry, is called a "Producer's 88." For a prescribed time period the lessee therein is given the exclusive right to explore for oil, gas and minerals and the exclusive right to drill and extract the oil and minerals found. The lessor reserves a certain percentage of the extracted or severed oil or minerals as a "royalty" or rent. It is obvious, then, that such leases consist of only two parts: first, the right freely to go upon the land and explore and, secondly, the right to drill and extract that which is discovered. The problem involved in the Miller v. Carr cases, supra, inhered essentially in the second aspect of these leases; we are here concerned with both.
In Carr, the plaintiff sought to enforce an oral contract by which Carr, the deceased lessor under an oil lease, promised to convey his reserved royalty interest in the unsevered oil. The court held ultimately that the lease granted only an incorporeal hereditament, i.e., an inchoate interest in the oil as a chattel when severed, but that until the oil was indeed extracted or severed it remained a part of the realty. Accordingly, the oral contract to convey or deliver the royalties was held to be unenforceable as against the statute of frauds. Clearly, the court was there concerned only with the alienability by the lessor of a reserved interest in the unsevered oil. Here, we are concerned with the taxability of the total interest in the lessee, i.e., of his right to occupy, explore and probe the land together with his inchoate interest in the unsevered oil. The Miller v. Carr cases, it seems to us, are therefore not controlling here.
The questions remain, however, whether the legislature can tax a leasehold interest as an estate in realty and, if so, whether it did so here. Ordinarily, leasehold interests in private real property are not amenable to ad valorem taxes. We are aware of no reason, however, why they cannot be if the legislature clearly so ordains and such classification is a reasonable one considering the purpose.[2] Indeed, our Supreme Court expressly recognized oil and mineral leases as being exceptions to the general rule in Dade County v. Pan American World Airways, Inc.[3]
So even if it be said that, technically, such interests would not be "freehold" interests or estates in land ordinarily considered as taxable interests, we think the legislature can declare otherwise. In fact, similar "bootstrap" legislation has long since been recognized as authorized so long as there is a reasonable relationship between the fiction and the fact and a valid purpose. Ninety-eight year leases, for example, have been deemed sufficient freehold estates for homestead tax exemption purposes.[4] In other common instances of "bootstrapping" salt water has been legislatively declared "fresh," and vice versa, for purposes of game and fish conservation and dry land has been declared submerged land and non-navigable waters navigable for similarly valid purposes. We would not be offended, therefore, if § 193.481(1), supra, does indeed declare oil, gas and mineral leases to be sufficient interests or estates in real property to warrant ad valorem taxation as real property. Such a declaration would meet the test of a reasonable classification for a valid public purpose.
*42 The final question remaining is whether § 193.481(1), supra, does precisely that. We think so. The statute relates generally to oil, gas and mineral rights which have been "sold or otherwise transferred." True it is, it does not expressly refer to a leasehold interest; but a review of its legislative history persuades us that it clearly intends to include it within the phrase "otherwise transferred."
The first legislative enactment relating to oil, gas and mineral interests was Ch. 57-150, Laws of Florida 1957, which was then codified as § 193.221, F.S. That section expressly excluded leasehold interests from taxation, providing in material part as follows:
"Whenever the mineral, oil or other subsurface rights in real property, not to include a leasehold interest in said subsurface rights, shall have been sold or otherwise transferred by the owners of the fee ... such rights ... shall be subject to taxation separate from the fee... ." (Italics ours.)
It was declared unconstitutional on other grounds in Cassady v. Consolidated Naval Stores Company.[5] But in 1963 the legislature enacted Ch. 63-355, Laws of Florida, which corrected the unconstitutional defect[6] and in effect re-enacted the former statute. Most significantly for consideration here, the latter act eliminated the exclusionary language pertaining to leasehold interests. It is our view that this was intentionally done for the purpose of including leasehold interests in the new enactment. Certainly it is proper for us in determining legislative intent to consider acts passed at prior sessions of the legislature, even those which have been repealed and/or declared unconstitutional.[7] In doing so we think it is particularly persuasive as bearing on legislative intent to note, as we have, that in the prior act which related generally to transfers of oil and mineral rights, the legislature specifically excluded leasehold interests therein whereas, in the re-enactment, it omitted the exclusion. This is not a case, therefore, where a statute essentially relates to specifics and wherein it may be said that if a given specific is not included it necessarily is excluded. Rather, we think this case falls within the rudimentary rule that when a subject is treated generally (e.g., the general transfer of oil and mineral rights, as here) it necessarily includes the specifics save those expressly excluded.
It is obvious to us, then, that the failure to exclude leasehold interests from the present statute was purposeful and that the legislature clearly intended to include them.[8] Moreover, we think the fact that § 193.481(1), supra, contemplates interests "separate and apart from the fee" further bolsters this conclusion; for if the legislature did not intend to include leasehold interests, then what other such "separate" interests indeed?
In view of our conclusions herein we must now necessarily reject Amoco's constitutional arguments which are predicated on the assumption that the lease herein was merely a grant of an inchoate interest in personalty. If so, Amoco contends, then the statute would be violative of Art. VII, § 1(a), Florida Constitution, which limits the power of counties to tax only realty and tangible personal property. In response, we need only reiterate the rationale of our holding herein, viz, that the statute before us does not seek to tax only Amoco's interest in the unsevered oil and minerals; it seeks to tax its exclusive right to occupy, explore and probe the land together with its interest in such unsevered oil and minerals which, while so unsevered, remain part of the realty. The legislature has properly declared these rights to be a sufficient taxable interest in real property *43 and the Carr cases, supra, do not preclude the legislature from doing so nor foreclose our conclusion upholding it.
Accordingly, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
HOBSON and SCHEB, JJ., concur.
NOTES
[1] (1939), 137 Fla. 114, 188 So. 103, same case (1940), 141 Fla. 318, 193 So. 45.
[2] Cf. Hillsborough County Aviation Authority v. Walden (Fla. 1968), 210 So.2d 193; Park-N-Shop v. Sparkman (Fla. 1957), 99 So.2d 571.
[3] (Fla. 1973), 275 So.2d 505, 509 n. 2.
[4] § 196.041, F.S. 1973.
[5] (Fla. 1960), 119 So.2d 35.
[6] See Dickinson v. Davis (Fla. 1969), 224 So.2d 262.
[7] See Amos v. Conkling (1930), 99 Fla. 206, 126 So. 283.
[8] Op.Att'y Gen. 072-362 (1972).