The Pennsylvania Bank and Trust Company, Appellant, *v.* Dickey.

Argued November 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edward G. Petrillo,* for appellant.

*John E. Eberly,* with him *Harper, Clinger & Eberly,* for appellee.

OPINION BY WATKINS, P. J., March 31, 1975:

This is an appeal from the Court of Common Pleas of Warren County, Civil Division, involving the interpretation of a complicated oil lease agreement.

On May 29, 1963, Elsie Davis was the owner in fee of 58½ acres of seated land in Brokenstraw Township, Warren County, Pennsylvania. On that date she entered into an oil lease agreement with Howard G. Donaldson and Carl Burgchardt. Under the terms of the agreement, more fully discussed below, she would receive 1/8 part of all oil produced and saved from the leased premises in return for allowing the lessees to drill for oil and gas. Donaldson and Burgchardt com-

menced to work the premises under the terms of the lease. Later they assigned various fractional interests to other parties. One such agreement was made to a Patrick E. Crotty. Crotty later assigned his interest to Robert E. Clark and Oscar W. Hogsett.

In 1965, Crotty's interest was assessed as realty by the tax authorities under the Act of May 29, 1931, P. L. 280, as amended, 72 P.S. §5971, et seq., which act related to the taxation and sale of seated lands. No one paid the 1965 taxes and on August 7, 1967, Maurice Dickey, the appellee in this case, successfully bid for the interest at a County Treasurer's sale. He received a Treasurer's tax deed purporting to convey to him, as realty, Crotty's interest in the oil production. This deed was recorded.

Subsequently, Clark and Hogsett brought suit by an action to quiet title claiming that the entire proceedings were error and that they retained their interests as sold to them by Crotty. Their interests had been transferred to The Pennsylvania Bank and Trust Company, which substituted itself as plaintiff in the action to quiet title.

The matter proceeded to trial and on November 15, 1973, the court below decided that there was a severance under the lease of Elsie Davis with a grant in fee of the said minerals to the original lessees. The court held that the lease created a severance of the minerals from the surface which resulted in a separate taxable estate in the oil produced which could, in turn, be taxable and taxed under the aforesaid statute. Thus, the actions of the taxing authority were legal and proper, the tax sale was valid, and Dickey was the rightful owner of the minerals in question, pursuant to his Treasurer's deed. The appellant excepted to the court's finding and on March 4, 1974, the court below rendered a supplemental opinion reaffirming its original holding. Appellant then took this appeal.

There are two basic issues involved in this case. The first is whether the tax sale purporting to convey Crotty's interest to Dickey was conducted in accordance with the applicable statutes. The second issue, which bears on the first, is whether the agreement between Elsie Davis, lessor, and Donaldson and Burgchardt, lessees, created an interest in real estate in the lessees.

Appellant argues that the County Treasurer's deed conveying the minerals to Dickey was invalid because, inter alia, the deed was improper in form in that it did not indicate that no personal property of the owner at the location of the real estate could have been seized and sold as personalty sufficient to pay the taxes involved. This, he argues, is in violation of the Act of June 3, 1885, P. L. 71, Section 1, 72 P.S. §5933, which provides that a sale of seated land is invalid "in any case where there was sufficient personal property on the premises to pay all the taxes assessed thereon, liable under the laws of this Commonwealth to have been seized therefor." Under this act it is absolutely necessary to a valid tax sale that the record must indicate that there was no personal property on the premises to pay the tax and that a demand had been made on the owner to pay, which had been refused. *Weaver v. Meadville Lumber Manufacturing Co.*, 61 Pa. Superior Ct. 167 (1915). In *Weaver*, supra, this Court invalidated a Treasurer's sale where the treasurer had made a mistake in selling certain land as unseated land rather than seated which was the way it was properly assessed. The Court in that case indicated that a return by the collector that there was not sufficient personal property upon the premises with which to pay the tax was made a part of the record but that the return accompanied a return of taxes upon unseated lands when in fact the lands were seated. It was because of the incorrect designation of the lands in question that the court invalidated the sale. In our case the only

matter of record regarding the manner of the tax sale is the treasurer's deed itself which does not show whether personal property on the land could have been seized and sold for the payment of the taxes. However, we do not have before us the treasurer's return. Thus, we have no way of deciding whether the statute was properly followed by the taxing authorities and, as such, must presume that they did comply with the applicable statute since to hold otherwise would place an unfair burden on both the appellee and the treasurer. Of course, the reason why the return does not appear of record is because the issue of whether the proper procedure was followed by the taxing authorities was not raised below. As such we must decline to decide that issue here as matters will not be decided for the first time on appeal. *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A. 2d 114 (1974).

Appellant's second contention is that the lease agreement did not convey a fee interest in realty unto the lessees and thus, the real estate tax levied on this interest by the taxing authorities was improper. If this is the case then the treasurer's deed must necessarily fall. At the outset it must be pointed out that Pennsylvania law recognizes three separate estates of land : the surface itself, the right of support, and the minerals contained thereunder. *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A. 2d 227 (1943). Therefore, it is possible to have a situation where any of the three portions of the land may be owned by persons different than the ones owning the other portions. So far as oil and natural gas are concerned the rights thereto ordinarily belong to the owner of the land. The oil and gas are a part of the land so long as they are on it, in it, or are subject to control therein. They are a part of the land while they are in place. However, they can be severed from the ownership of the surface by grant or exception as separate corporeal rights. *Duquesne Natural Gas Com-*

*pany v. Fefolt*, 203 Pa. Superior Ct. 102, 198 A. 2d 608 (1964). The issue is whether the original agreement of May 29, 1963 between Elsie Davis and Donaldson and Burgchardt created a separate corporeal estate in the grantees or whether the agreement merely created a license or incorporeal right in the grantees in which case the ownership of the minerals in place would remain that of the grantor. If the conveyance of the minerals in the land worked a severance of the mineral estate from the surface estate, then each estate could be encumbered, occupied, or transferred without any effect upon the other. *Delaware and Hudson Canal Co. v. Hughes*, 183 Pa. 66, 38 A. 568 (1897). There is no question, therefore, that if we hold the agreement to be a grant of a separate estate to the grantees then the appellee's purchase of said interest at a treasurer's sale for non-payment of real estate taxes was valid.

The applicable portion of the lease stated as follows:

"That the said party of the first part, for and in consideration of the sum of one dollar paid to said party of the first part by said party of the second part, the receipt of which is hereby acknowledged, and the covenants and agreements of the respective parties hereto hereinafter contained, has *granted,* demised, leased and let, and by these presents do hereby grant, demise, lease and let, unto the said parties of the second part, their heirs or assigns, the *exclusive* right for the sole and only purpose of drilling and operating for oil and gas, and constructing tanks, pipe lines, etc., for taking care of the said product, on all that certain tract of land situated in . . ."

". . . to have and to hold the premises, for the said purpose only, for the term of one (1) years from this date, *and as long thereafter as oil or gas is found,* or the rent for failure to commence operations is paid." (Emphasis added.)

The agreement goes on to provide that the grantor was to receive 1/8 royalty on the gas produced from each well and the full, equal 1/8 part of all oil produced from the premises. It also stated that the grantees could surrender the "lease" at any time unto the grantor. All gas was to be taken at the expense and risk of the grantor and limited to 200,000 cubic feet per annum. The agreement refers to itself throughout as a lease creating a leasehold interest.

Notwithstanding the fact that the agreement purports to be a lease conveying merely a leasehold interest the determinative fact is whether the agreement did work a severance of the mineral estate from the surface estate. The Act of April 1, 1909, P. L. 91, §1, 21. P.S. §2, as amended, provides that unless an instrument in writing expressly limits itself to the granting of a lesser estate, the words "grant and convey", or either one of said words, passes to the grantee a fee simple title to the premises conveyed. The words of the agreement in the instant case do contain the word "grant" in the conveying clause. However, it must be noted the words "grant" and "convey" are to be given such effect only when the writing fails to expressly limit the conveyance to a lesser estate. It is also apparent from the last clause of this section that the legislative purpose of the section was to enable conveyances to be made in fee without the necessity of using the words "heirs and assigns" since the clause stated: "although there be no words of inheritance or perpetuity in the deed." Thus, it is clear that the purpose of the act was to validate written instruments purporting to convey realty in fee which use the words "grant" or "convey" but fail to use words of inheritance or perpetuity since before the passage of the Act the failure to employ words of inheritance or perpetuity reduced the conveyance to one of a life estate only. *Klingler v. Wick,* 266

Pa. 1, 109 A. 542 (1920). It is not the purpose of the Act to translate every type of transfer which has the words "grant" and "convey" into a transfer of a fee interest. Thus, the mere fact that the word "grant" appears in our agreement does not necessarily create a fee simple estate in the grantee.

The agreement in the instant case does grant to the grantees the exclusive right to the oil and gas. Thus it is more than a mere license granting them the right to remove the minerals because the grantor is prohibited, by its terms, from removing the minerals herself or from permitting anyone else to do so. *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 74 A. 207 (1909). The agreement also stated that it was for a period of one year and as long thereafter as oil or gas were found. Thus the only time limit on the agreement was to be determined by the existence of the gas and oil themselves. This fact tends to indicate that the agreement did indeed create a corporeal interest in the minerals themselves in the grantees. However, appellant argues that since the grantor was to receive a 1/8 part of all the oil produced she did not in fact convey all of her interest in the mineral estate to the grantees and that this fact negates the proposition that a fee simple interest was created in them because for such an interest to be created it is mandatory that the grantor convey all of the oil and gas in place unto the grantees.

In *Barnsdall v. Bradford Gas Co.*, supra, the court held that where a written instrument states that it "grants, demises, leases and lets unto the party of the second part" a certain tract of land "for the sole and only purpose of mining and operating for oil, gas, and other minerals" the writing creates a corporeal interest in the grantee in the demised premises and is not a mere license to enter and operate for the oil and gas. The court went on to say that, "by the agreement the exclusive right to take and appropriate all the minerals

is conveyed, and during the term of the lease the lessor has no right to enter and operate for oil and gas. The title to the oil except the one-eighth thereof is vested in the lessee, as is also the title to the gas and other minerals in the land." In *Barnsdall,* supra, the court decided that the grantee, having a corporeal interest in the minerals, was entitled to bring an action in ejectment against a third party who entered onto the land. The language used by the court is somewhat confusing in that it states that the title to the minerals vested in the grantee. However, at the same time, the court refers to the grantee as a lessee. Thus, it is not clear whether the court was deciding that the grantee had a separate fee simple estate in the minerals since it only had to decide, in that case, whether the grantee owned a sufficient interest in the estate to enable him to bring an action of ejectment. The decision does bear on our case, however, to the extent that it recognizes that the grantee had the exclusive right to take and appropriate the oil and gas and even the lessor had no right to enter and operate for oil and gas. The court did not decide that the fact that the grantor was given 1/8 interest in the minerals defeated any claim that the grantee had obtained a separate estate in the minerals. It must also be noted that the term of the agreement in *Barnsdall,* supra, was for 10 years and "as much longer as the premises were operated for oil or gas. . . ." while the agreement in the instant case provided for a term of 1 year "and as long thereafter as oil and gas is found. . . ." A comparison of the phrases in the two agreements reveals that in the instant case the wording more strongly indicates that a separate mineral estate was created in the grantee since it provides that the term of the agreement was for 1 year and as long thereafter as oil and gas is found. This indicates that the grantees were to be able to remove all of the oil and gas and, of course, tends to show the creation of a

separate estate. The *Barnsdall,* supra, case's wording provides for a term of 10 years and "as much longer as the premises were operated for oil or gas" indicating that a situation could arise whereby more oil or gas remained in the ground but the grantees did not have any further interest in it because they had ceased to operate the premises. In our case the term was to continue so long as oil and gas were found in the premises, thereby creating a much stronger interest in the minerals in the grantees.

In *Appeal of Baird,* 334 Pa. 410, 6 A. 2d 306 (1939), the court held that the tax assessor could properly impose a real estate tax on a grantor's 1/8 interest in oil and gas, which interest represented the consideration paid to grantor by grantee pursuant to an agreement similar to the one in our case. The court reasoned that the right to receive 1/8 of the oil and gas produced as a royalty was incident to an estate in oil and gas remaining in the grantor as owner of the land. The situation is similar to the one in our case except that in *Baird,* supra, the real estate assessment was made against the grantor because he had 1/8th interest in the mineral estate while in our case the assessment was made against the grantees who had a 7/8th interest in the mineral estate. In *Baird,* supra, the court stated that it would be impractical to require the taxing authorities to levy a separate tax on each and every one of the fractional interests in a mineral estate. The court was not obliged to specifically find that the taxing authorities could also have imposed the tax on the grantee's 7/8th interest and it refrained from so doing since that issue was not ripe for adjudication at that time. In any event the rights of both the grantor and the grantee regarding taxes were set forth in the agreement in that case.

A review of the above case and others pertaining to this type of agreement has failed to reveal any instance

where the courts have squarely decided the issue in this case. Appellant cites language from *Duke v. Hague,* 107 Pa. 57, 66 (1884), whereby the court states that a grantee under such an oil and gas agreement "is not an absolute owner of the whole of the oil as he would be were all the oil in place conveyed to him in fee." Appellant reasons from this that since the grantor in our case was to receive a full equal 1/8 part of all the oil and gas produced and saved from the premises the grantees were not made absolute owners of the mineral estate and thus no separate mineral estate was created in them by the agreement. However, in *Duke,* supra, the term of the agreement was for 20 years and the agreement contained no language therein stating that the term was to continue so long as oil and gas were found. Hence, it is clear that in *Duke,* supra, a mere tenancy for years in the mineral estate was created in the grantee and therefore he had merely a leasehold interest. In our case the grantees were given the exclusive right to remove all of the oil and gas in the premises for as long a period as it could be found. As stated in *Barnsdall,* supra, even the grantor could not operate for oil and gas under such an agreement. We find that such language did result in a separate, mineral estate being created in the grantees, and as pointed out in *Baird,* supra, such a mineral estate is taxable realty. Appellant argues that since no one actually knows for sure how much oil or gas is on the premises that it is impractical to tax its 7/8th interest in an unknown quantity. However, it is no more difficult to assess a tax on 7/8th of unknown quantity as it is to assess a tax on 8/8th or 1/8th of an unknown quantity and the court in *Baird,* supra, has held that such a tax is proper. We hold that the real estate tax imposed on the grantees' interest in the oil and gas was proper since the grantees did have a separate mineral estate in the premises which was created by the terms of the agreement giving

the grantees the exclusive right to produce and save oil and gas for so long as it could be found. Thus the subsequent treasurer's sale of the premises to Dickey for nonpayment of the tax was valid.

The judgment of the court below is affirmed.