### GAC PROPERTIES, Inc. et al v. EXXON CORPORATION.
No. 73-883-CA-01.

Circuit Court, Collier County.

March 25, 1977.

196

Samuel R. Danziger, Miami, for the plaintiffs.

Peter J. Winders and Ruth B. Himes of Carlton, Fields, Ward, Emanuel, Smith & Cutler, Tampa, for the defendant.

CHARLES T. CARLTON, Circuit Judge.

*Summary final judgment:* This cause came on to be heard upon the cross motions of plaintiffs and defendant for summary judgment. The court has considered the pleadings, answers to interrogatories, admissions and affidavits on file, together with the briefs and oral argument of counsel for both parties.

It appears that there is no dispute as to any material fact and that Exxon Corporation is entitled to judgment as a matter of law. It appears without dispute that on December 29, 1942, Lee Cypress Company executed an oil, gas and mineral lease to Humble Oil and Refining Company (now Exxon Corporation) covering 141,270 acres in Lee, Collier and Hendry Counties. Within the primary term of 10 years, Exxon obtained production of oil on lands covered by the lease and production has been continuous since. In 1948, Lee Cypress Company and Collier Corporation executed a deed granting defendant an easement and right-of-way across their lands to enable Exxon to expeditiously develop all land under its leases from the two corporations.

In 1962, GAC acquired approximately 3,900 acres of the property under the lease. By this suit, GAC sought declaratory relief and asserted that the lease should be cancelled as to its property, arguing — (1) because there are no producing wells on the particular tract owned by GAC, the lease expired as to that portion of the property; (2) rental or royalties should have been paid to plaintiff since it acquired the property; (3) once plaintiff acquired the property, Exxon was required to develop the GAC property independent of the rest of the lease; and (4) that if the lease is terminated, the easement should be terminated as well.

GAC makes no contention that, treating the lease as a whole, there has been no reasonable development of the lease. GAC merely wishes to confine the inquiry to its own property on which production has not yet been obtained.

The terms of the lease and the applicable oil and gas law clearly show that GAC cannot prevail on any of its theories and that Exxon is entitled to judgment as a matter of law. It is evident from read-

ing the lease that the lessor and lessee treated all of the land covered by the lease as a unit for the purpose of investigating, exploring, drilling and producing oil, gas and minerals. It is specifically provided in the lease that "no change or division in ownership of the land shall operate to enlarge the obligations or diminish the rights of the lessee." This provision alone should be sufficient to answer GAC's contention that merely because it acquired a portion of the land the lessee is required to develop that portion of the land rather than following its plan for development of the land as a whole. Further, the lease clearly provides that once production occurs anywhere on the lease, there is no further obligation to pay delay rental.

As to plaintiff's contention that the lease should be terminated because GAC has not been paid any portion of the royalties from oil produced on other lands covered by the lease, there is nothing in the lease which would require apportionment of royalties from one part of the leased property to be paid to a subsequent owner of other non-producing lands covered by the lease. There is no "entirety clause" in this lease, which is the usual way a lessor-landowner achieves such a result, should he wish to do so. There is nothing to show that GAC bargained with the lessor for a portion of the royalties from other lands when it acquired its property. And, although this precise question has not arisen in Florida, it is the law of the vast majority of states which have considered the question that apportionment of royalties is not implied. The majority of the states follow a "non-apportionment" rule, with the proviso, of course, that the parties by specific contract can achieve a different result: Williams and Meyers, *Oil and Gas,* Volume 2, §520, "Apportionment of Royalties." An example of the majority view is *Japhet v. McRae,* 276 S.W. 669 (Tex. Civ App. 1925). The majority rule is founded in part on reasoning that oil, before being produced is part of the land and is realty, and accordingly belongs to the owner of the land; that an oil, gas and mineral lease grants the lessee the right to find and reduce the minerals to possession, but the title to the minerals in place remains in the landowner; that the lessee is entitled only to the oil and gas reduced to possession at the surface; and that unaccrued royalty is part of the land, being an incorporeal heraditament which follows the land and passes with the devise or sale thereof; that therefore, unless otherwise specifically contracted, royalty is paid to the owner of the land from which production is actually obtained. *Central Pipe Line Co. v. Hutson,* 401 Ill. 447, 82 N.E. 2d 624 (1948). All of these principles of general oil and gas law are established in Florida. *Miller v. Carr,* 193 So. 45 (Fla. 1940). Accordingly, non-apportionment is not only the majority view in this country, but it is the logical result of existing Florida law.

Moreover, although some law review commentators have advanced the proposition that the "apportionment" theory should be implied in the absence of language to the contrary (the contrary of the majority rule which implies non-apportionment unless the contract provides otherwise) the justification for their argument is that it might be unfair to allow *drainage* from one portion of the property covered by a lease by a well on another portion of the property without an apportionment of the royalties. While such a result might be unfair if there were a possibility of drainage, that assumption has no justification in Florida which has elaborate spacing and permitting requirements under Chapter 377, Florida Statutes, to define drilling units and prevent such an unfair result, and secondly, under this lease, consisting of 141,000 acres in scattered parcels there is no practical danger of drainage, and no reason to imply a contractual provision based on the possibility of drainage, when drainage could not exist as a fair possibility in the contemplation of the parties at the time the lease was executed.

Accordingly, I find no intention to apportion from the language of the lease itself, and indeed it appears from reading the lease as a whole that the parties to the lease contemplated non-apportionment in the event of subsequent sale of a portion of the land. Further, the law of this state and of other states establishes that non-apportionment is implied absent a specific agreement to the contrary.

Because the lease is not terminated, the express easement is not terminated. Additionally, the recorded easement has been used as to a portion of the land covered by the easement, and, under Florida Statutes, Section 712.03(5) the use of any part of an easement prevents its termination by abandonment. Further, non-user alone does not constitute abandonment in a case of an easement created by a deed. 11 Fla. Jur. *Easements*, §41. Further, of course, the mineral lease itself grants an implied easement of access across the surface. The mineral lessee, by the terms of the lease is assigned the mineral owner's implied easement of access to the minerals, which is an incident of ownership of the mineral estate: *P & N. Investment Corp. v. Florida Ranchettes*, 220 So.2d 451 (Fla. 1st DCA 1968).

Premises considered, it is thereupon ordered, directed and adjudged that —

1. The motion for summary judgment of plaintiffs GAC Properties, Inc. and Ralph Fisch, Trustee, is denied and the motion for summary judgment of Exxon Corporation, previously known as Humble Oil and Refining Company, is granted.

2. The court declares that all Exxon's property rights set forth in the lease and the right-of-way deed are in full force and effect

according to their terms, and will remain so so long as oil, gas or other minerals are produced from any of the lands described in the lease.

3. Having declared the rights of the parties as requested in the complaint and the answer, by this judgment having established the rights of the parties, and there being no further judicial action to be taken, the action be and the same is hereby dismissed.