COASTAL PETROLEUM
COMPANY, Plaintiff,

v.

INTERNATIONAL MINERALS &
CHEMICAL CORPORATION,
Defendant.

No. TCA 77–946–MMP.

United States District Court,
N.D. Florida,
Tallahassee Division.

Aug. 12, 1988.

Robert J. Angerer, Joseph C. Jacobs, C. Dean Reasoner, Washington, D.C., for plaintiff.

Hume F. Coleman, Jr. and Chesterfield Smith, Tallahassee, Fla., for defendant.

## FINAL ORDER

PAUL, District Judge.

This cause is before the Court upon the motions for summary judgment filed by International Minerals & Chemical Corporation ("IMC") based on various, alternative grounds. By order dated April 22, 1988 (doc. 652), this Court ordered supplemental briefing by the parties limited to the legal issues presented by IMC's motion for summary judgment on the ground of lack of possessory interest (doc. 549). After consideration of the supplemental memoranda of law and related exhibits, as well as all previously filed documents and exhibits in support of or opposition to summary judgment, this Court hereby GRANTS IMC's motion for the reasons discussed herein.

*Factual Background*

Coastal has filed a complaint for conversion (doc. 1) seeking compensatory damages in the amount of $800,000,000.00 and unspecified punitive damages. Coastal alleges that it entered into a lease agreement, Drilling Lease 224–B, under which it was given the right to explore for oil, gas and certain minerals (doc. 1, p. 2, ¶ 6). The gravamen of plaintiff's complaint is that defendant IMC willfully mined prosphate and uranium upon the lands leased to Coastal without permission and payment to Coastal.

In this motion for summary judgment (doc. 549), IMC contends that Coastal did not own or have a right to possession of phosphate under the terms of Lease 224–B and therefore Coastal has no cause of action for conversion against IMC for mining of phosphate. Specifically, IMC advances two arguments: (1) the lease did not give Coastal any right to phosphate; and (2) even assuming the lease did grant a right to phosphate, it conferred at most an incho-

ate right to explore for those minerals named in the lease and to extract them when found, which interest is insufficient to support a conversion claim.

## Exploration Contract for Oil, Gas and Minerals and Option to Lease

On October 4, 1941, the Trustees and Arnold Oil Explorations, Inc. entered into an exploration contract covering not only oil and gas, but other minerals, as shown by the following provision:

> For the consideration hereinbefore named, and upon the express condition that Lessee shall have performed the work and things herein agreed to be done by said Lessee, said Trustees, in addition to the rights herein granted to explore for oil, gas and other minerals, hereby grant Lessee for the period covered by this instrument and no longer, the exclusive option to select areas within those hereinabove described and explored, and the right to receive from said Trustees oil, gas and mineral leases to be known as "Drilling Leases"....

(doc. 570, Attachment C). The exploration contract does not specify whether phosphate is contemplated within the "other minerals" language.

## Lease 224–B Provisions

Drilling Lease 224–B as modified, leases certain areas, referred to as drilling blocks, to Coastal:

> ... for the sole and only purpose of prospecting, drilling, mining and operating for the production of oil, gas and sulphur, laying pipe lines, building tanks, roads, power stations and structures thereon, but not including bulkheading and filling water bottoms....

(doc. 1, exh. A). The lease further provides:

> In consideration of the sum hereinbefore stated, the work herein agreed to be performed, the royalties herein provided for, and all other agreements of Lessee herein contained, said Trustees do hereby grant, lease and let exclusively unto Lessee and Lessee's successors and assigns, subject to the express permission requirements herein contained, those cer-

tain areas hereinbefore described, for the purpose of drilling for and producing therefrom oil, gas, sulphur, casinghead gas and casinghead gasoline, together with rights of way and easements for roads, pipe lines, telephone and telegraph lines, tanks, power houses, stations, gasoline plants and fixtures for producing, treating and caring for such products, as well as any and all other rights and privileges necessary and incident to or convenient for the economical operation of such areas, alone or conjointly with neighboring areas, for oil, gas, sulphur, casinghead gas and casinghead gasoline.

(doc. 1, exh. A).

## Discussion

In Florida, "conversion is defined as a wrongful taking of personal property with the intent to exercise an ownership which is inconsistent with the real owner's right of possession." *King v. Saucier*, 356 So.2d 930, 931 (Fla. 2d D.C.A. 1978) (citing *Wilson Cypress Co. v. Logan*, 120 Fla. 124, 162 So. 489 (1935)); *Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1507 (11th Cir. 1985) (conversion is "an act of dominion wrongfully asserted over another's property inconsistent with his ownership of it," citing *Belford Trucking Co. v. Zagar*, 243 So.2d 646, 648 (Fla. 4th D.C.A. 1970)). "The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation." *National Union Fire Insurance Co. of Pennsylvania v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir.1985) (citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 33 So.2d 858, 860 (1948)).

IMC contends that Coastal does not have a present or immediate right of possession sufficient to maintain this conversion claim. Relying primarily on *Collins v. Coastal Petroleum Company*, 118 So.2d 796 (Fla. 1st D.C.A. 1960), Coastal argues that it has a possessory or corporeal interest under the exploration contract and lease 224–B in the unsevered minerals, including phosphate.

In *Collins*, Coastal sought a declaratory judgment defining its rights under certain

leases executed by the Trustees of the Internal Improvement Fund. *Id.* at 798. Coastal asserted that the leases granted it the right to explore for and recover from certain gulf, river and lake bottoms all minerals including metallic minerals. *Id.* The *Collins* court discussed the pertinent facts as follows.

"Pursuant to the Trustees grant of authority by Chapter 20680, Laws of Florida, Acts of 1941, in 1941 the Trustees entered into a contract with Coastal's predecessor designated as "Exploration Contract for Oil, Gas and Minerals and Option to Lease." *Id.* In 1944 and 1946, the Trustees and Coastal entered into three drilling leases, designated 224–A, 224–B and 248, in which Coastal was granted the right to produce from the described areas "oil, gas and sulphur." *Id.* These drilling leases were re-executed in 1947. *Id.* In 1951, the leases were modified by resolution to include the discovery of minerals other than oil, gas and sulphur. *Id.* at 798–99. In 1954, the Trustees attempted to modify by resolution the 1951 drilling leases to include "halite (common table salt) and other natural soluble salts, petroleum and petroleum products, gas, including petroleum, helium and rarely others such as carbon dioxide, sulphur and brines from which borax and borates, alum, epsomite and rare elements are extracted and concentrated, but said amendment did not include rutile, ilmenite, zircon and other metallic bearing minerals." *Id.* at 799–800. This resolution instigated the *Collins* lawsuit. *Id.* at 800.

In *Collins*, the court initially noted that section one of Chapter 20680 does not refer to any minerals or substances other than "petroleum oil and gas leases" but that section two authorizes the trustees to sell and convey "petroleum oil and/or gas and/or any other mineral of any other kind whatsoever...." *Id.* at 801. The court also noted the limiting language in the drilling leases, to wit: "for the sole and only purpose of prospecting, drilling, mining and operating for the production of oil, gas and sulphur." *Id.* at 802. However, the court interpreted this language in the drilling leases in light of the language contained in the exploration contract referring to oil, gas and other minerals, and concluded that Coastal became legally entitled to receive mineral leases upon performing the exploration contract. *Id.*

The court reasoned that the Trustees might have insisted on a waiver or abandonment of Coastal's rights to other minerals because of its failure to timely demand leases conforming to the exploration contract. *Id.* But the Trustees did not insist on such a waiver, and thus, waived their right to assert Coastal's waiver of the right to other minerals. *Id.* The Trustees having waived this right and Coastal having relied on it by expending substantial sums in exploration of other minerals, the court concluded that the Trustees could not now repudiate their action by adopting the 1954 resolution. *Id.*

Next, the *Collins* court turned to the effect of the subsequent resolutions on the issue of metallic minerals. The court concluded that the "other minerals" language in the resolutions, particularly the resolution of 1951, was intended to "include all minerals of any kind whatsoever." *Id.* at 803. Accordingly, the court declared the resolution of 1954 a unilateral attempt to vary the terms of the contract and, as such, void, thus leaving intact the lease agreement as modified by the 1951 resolution. *Id.* at 804.

Coastal argues that a right to hard minerals, including phosphate, was clearly granted in the lease as determined in the *Collins* decision. Coastal further asserts that other decisions, notably involving other parties, have determined that minerals were included within the leases. These other decisions were rendered in the context of condemnation or other proceedings and found minerals to be included within the particular lease construed.

IMC interprets Coastal's rights under the leases based on the plain language of those agreements. As set forth above, Lease 224–B states that it is "for the sole and only purpose of prospecting, drilling, mining and operating for the production of oil, gas and sulphur." The lease further provides that the Trustees grant, lease and let

exclusively to Coastal the described areas "for the purpose of drilling for and producing therefrom oil, gas, sulphur, casinghead gas and casinghead gasoline...." The 1951 resolution provided that potash and other minerals were included in Lease 224–B. The 1954 resolution limited the 1951 resolution to specifically enumerated minerals, not including phosphate.

Lease 224–B does not mention phosphate. However, the exploration contract refers to "the rights herein granted to explore for oil, gas and other minerals." Moreover, as indicated above, the statutory authority behind the exploration contract, Chapter 20680, Laws of Florida, Acts of 1941, authorizes in section one "petroleum oil and gas leases," and in section two, authorizes the trustees to sell and convey petroleum oil, gas and "any other mineral of any kind whatsoever."

As discussed above, the *Collins* court determined that a reading of the exploration contract in conjunction with the statutory authority behind it would yield an interpretation that Coastal became legally entitled to receive oil, gas and mineral leases. On the other hand, the court clearly stated that the lease taken alone without consideration of the exploration contract, would lead to the conclusion that Coastal was granted only the right to oil, gas, sulphur, and petroleum derivatives such as casinghead gasoline. *Id.* at 802. The *Collins* court concluded that the 1951 resolution was intended to include minerals of any kind whatsoever, and that the consideration paid for the original exploration contract was sufficient to support the resolution. It is significant that *Collins* did not expressly decide that Lease 224–B initially envisioned other minerals. Rather, the *Collins* decision was based on estoppel considerations because Coastal had acted in reliance on the 1951 resolution by expending certain sums for exploration. Because of this reliance, the *Collins* court did not permit the 1954 resolution to defeat the 1951 resolution which broadly referred to "other minerals."

■ Turning now to the effect of the *Collins* decision on this Court, it is clear

that the district courts are "bound to adhere to decisions of [Florida's] intermediate appellate courts, absent some persuasive indication that the state's highest court would decide the issue otherwise." *Studstill v. Borg Warner Leasing*, 806 F.2d 1005, 1007 (11th Cir.1986). There is some indication that Florida's highest court would interpret Lease 224–B differently (see discussion of *Miller v. Carr, infra*). Moreover, in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979), the Supreme Court, citing *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971), stated that "[i]t is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." Accordingly, this Court finds the *Collins* decision is not binding on IMC since it was not a party and was not represented in the *Collins* litigation.

■ That determination brings this Court back to a construction of the lease anew. Scrutinizing the lease only, this Court could simply find that the lease does not mention phosphate and therefore gives Coastal no possessory right to phosphate or other hard minerals. This Court could reach the same conclusion by considering not only the lease, but the subsequent resolutions as well, because the 1954 resolution clarified the lease to include only the enumerated minerals and thus not phosphate.

■ Even if Lease 224–B was determined to encompass phosphate, this Court would have to determine the type of interest conferred and whether that interest is sufficient to enable Coastal to maintain this action for conversion. Relying on the authority of *Miller v. Carr*, 141 Fla. 318, 193 So. 45 (1940), IMC argues that the lease does not confer a possessory interest but only an inchoate right to explore for the minerals and to extract them when found.

In *Miller v. Carr*, 137 Fla. 114, 188 So. 103 (1939), the decedent, Alonzo A. Carr, orally promised to grant to Pearl Miller and her husband by will one-half of the royalties from his oil property in Pennsylvania.

*Id.* 188 So. at 104. The Court addressed the issue of whether the interest in the royalties conveyed by the oil lease is personal property or an interest in land in *Miller v. Carr*, 141 Fla. 318, 193 So. 45 (1940). The pertinent provision of the lease stated:

> ... the said parties of the first part have granted, devised and let unto the party of the second part his heirs or assigns, for the purpose and with the exclusive right of drilling and operating for Petroleum and Gas for, during and until the full term of one year next ensuing the day, and year above written, with the right of renewal thereafter, so long as oil or gas shall continue to be found in paying quantities, ALL that certain tract of land....

*Id.* 193 So. at 46. The lease further provided for a forfeiture of rights in the event the party of the second part failed to perform the terms of the lease. *Id.* at 47. It is noteworthy, that the Coastal lease contains similar language.

Plaintiff Miller claimed "there was a constructive severance of the oil 'in place' and title to the oil passed to the lessee and should be treated and considered the same as if it had been taken from the land before the death of Carr." *Id.* The court disagreed and instead construed the lease as passing "the right to produce oil from the land and nothing more." *Id.* The *Miller* court relied upon two Pennsylvania court decisions, *Kelly v. Keys*, 213 Pa. 295, 62 A. 911 (1906) and *Funk v. Haldeman*, 53 Pa. 229 (1866), which found that similar leases grant only exclusive privileges to go on the land for oil prospecting, but do not grant an estate in the land or oil. *Id.* 193 So. at 47–48. The *Miller* court construed the subject lease as granting only the right to produce and sever the oil from the land, and that only the amount severed actually passes under the grant.[1] *Id.* at 48.

Coastal counterargues that *Miller* is distinguishable from the instant case because Lease 224–B, unlike the *Miller* lease, con-

veys a corporeal interest—the right not only to go onto the land but also the right to possession of the minerals in place in the subsurface. Specifically, Coastal argues that broad application of *Miller* to this case is questionable because the *Miller* court failed to distinguish between the two different type of granting clauses found in oil and gas leases under Pennsylvania law. Coastal contends that the earlier Pennsylvania cases of *Funk* and *Kelly* contained "exclusive right" granting clauses, that is, clauses granting the exclusive right to go upon the land to take oil and gas. The *Miller* court relied on these cases in likewise finding that only an incorporeal hereditament was conveyed. However, Coastal urges, the *Miller* lease contained a "lease and let" type of granting clause. It is Coastal's contention that Pennsylvania courts construing these type of clauses have found that a corporeal interest in the land is granted supporting ejectment even though the grantee has never been in possession of the land.

Coastal advances the case of *Barnsdall v. Bradford Gas Co.*, 225 Pa. 338, 74 A. 207 (1909) to support its argument concerning the two types of granting clauses. In *Barnsdall*, the court held that a lease stating that it "grants, demises, leases and lets unto the party of the second part" certain tracts of land "for the sole and only purpose of mining and operating for oil, gas, and other minerals" creates a corporeal interest and not a mere license to enter and operate for oil. *Id.* 74 A. at 208.

A fairly recent superior court case, *Pennsylvania Bank and Trust Co. v. Dickey*, 232 Pa.Super. 224, 335 A.2d 483 (1975), not cited by Coastal, discusses *Barnsdall* and concludes "it is not clear whether the [*Barnsdall*] court was deciding that the grantee had a separate fee simple estate in the minerals since it only had to decide, in that case, whether the grantee owned a sufficient interest in the estate to enable him to bring an action of

---

1. Courts of other jurisdictions have reached the same conclusion as that of *Miller v. Carr.* E.g., *Gulf Refining Co. of Louisiana v. Glassell,* 186 La. 190, 171 So. 846 (1936); *Watford Oil & Gas* *Co. v. Shipman,* 233 Ill. 9, 84 N.E. 53 (1908); *Phillips Petroleum Co. v. Mecom,* 375 S.W.2d 335 (Tex.Civ.App.1964).

ejectment." *Id.* 335 A.2d at 487. Even if this Court was persuaded that the *Miller* reasoning is erroneously founded on an interpretation not applied by Pennsylvania courts, this Court is mindful that the cases relied upon by Coastal are ejectment actions to regain possession and not actions for monetary damages based on conversion, as in the instant case. Moreover, the *Dickey* case distinguishes those cases where the grantee was granted the exclusive right to remove all of the oil and gas as long as there is any to be found from those cases where the lease is for a term of years. *Id.* at 487–88. Under *Dickey*, these foregoing factual situations make a stronger argument for finding that the agreement intended to create a corporeal interest. *Id.*

In the instant case, Lease 224–B does "grant, lease and let" the certain areas described in the lease and contains language referring to an "estate." Under *Barnsdall,* this language tends to support a finding that Coastal was granted a corporeal interest (sufficient to maintain an *ejectment* action) in those lands and not a mere license to go onto the land and prospect for minerals. However, the instant case does not involve some of the more compelling facts found in *Dickey.* Lease 224–B is for a five year term subject to what appears to be automatic renewal every five years if Coastal commences drilling operations during the first five year term (doc. 1, exh. A). The lease further provides that it shall become void during any subsequent term in which Coastal does not commence or complete or does abandon the wells (doc. 1, exh. A).[2] Unlike *Dickey,* Lease 224–B does not grant an exclusive right to all minerals as long as any are found. Further, Lease 224–B contains the following qualifying language:

The rights of either party hereunder may be assigned in whole or in part only after written consent thereto from the Trustees is first obtained; and the provisions hereof shall extend to the successors and assigns of the parties hereto, but no change or division in ownership of land rentals or royalties, however accomplished, shall operate to enlarge or diminish the obligations or the rights of either party. Neither this lease nor the work to be performed hereunder shall in any way limit the right of said Trustees to sell or dispose of, or to lease for other purposes than those herein, any area or areas herein described or any part thereof, covered by this lease, but in case of sale, conveyance or lease by the said Trustees, such sale, conveyance or lease shall be subject to this lease.

(doc. 1, exh. A). This language tends to show that the Trustees retained a possessory interest and granted merely a license to Coastal.

This Court finds it unnecessary to consider all of the Pennsylvania state cases that conceivably could have been overlooked by the *Miller* court. Rather, this Court is compelled to follow Florida law, as embodied in *Miller v. Carr,* as did Judge Atkins in *Coastal Petroleum Co. v. Secretary of the Army of the United States,* Case Nos. 68–951–Civ–CA and 69–699–Civ–CA (consolidated) (S.D. Fla.1971). That case involved a construction of the rights granted to Coastal under Lease 248 which contains operative language identical to that in Lease 224–B. Judge Atkins ruled on the question of the liability of the Trustees to Coastal as follows:

I am convinced that the law of Florida is clear and find no need to look to the law of any other state.

The controlling decision is *Miller v. Carr,* 141 Fla. 318, 193 So. 45 (1940).

2. A decision rendered by another state court, *Watford Oil and Gas Co.,* 233 Ill. 9, 84 N.E. 53 (1908), held that oil and gas leases convey a freehold interest for the specific purpose of prospecting and that such purpose "becomes extinct when the purpose is accomplished or the work is abandoned." *Id.* 84 N.E. at 54. The *Watford* lease contained a clause giving the parties the right to cancel upon the payment of one dollar. *Id.* The Court stated "a court of equity will not do a vain and useless thing by rendering a decree settling the rights of parties which one of them may set aside at his will." *Id.* Although Lease 224–B does not contain an express cancellation clause of the same type, it does provide for forfeiture of rights based on Coastal's decision to not perform the terms of the lease.

The rule of law therein established is that a lease granting the exclusive right to drill and operate for oil, gas and other minerals is but a contract for the limited purpose specified. It passes only the right to produce oil, gas and minerals without passing any title until the subject matter is severed from the earth. The interest conveyed is not a fee simple determinable as suggested by Coastal; rather it is a grant of an inchoate heriditament.

(doc. 654, appendix tab 3). As to the issue of the more recent and inconsistent Pennsylvania law, Judge Atkins noted that the Florida Supreme Court had this caselaw before it when it rendered the *Miller* decision "thus adding emphasis to the authority of *Miller v. Carr, supra.*" *Id.*

Further support for application of *Miller v. Carr* to the instant case is found in Judge Norris's order of September 25, 1987, granting summary judgment to the plaintiff in *American Cyanamid Co. v. Coastal*, Case No. GC–G–82–2973 (In the Circuit Court of the Tenth Judicial Circuit, in and for Polk County, Florida). Citing *Miller v. Carr*, the court determined that Lease 224–B granted an inchoate right to explore for and extract certain minerals when found (doc. 653, attachment C). The court further found that any rights Coastal may have had were extinguished by the 1976 Memorandum of Settlement entered into between Coastal and the Trustees.[3] *Id.*

Based on the authority of *Miller v. Carr*, rendered by the highest court of this state, this Court concludes as a matter of law that, at most, Lease 224–B conveyed to Coastal the inchoate right to explore for and produce certain minerals from those lands encompassed in the lease. Coastal has neither produced minerals nor paid any royalties to the Trustees. Therefore, this Court GRANTS IMC's motion for summary

judgment based on Coastal's lack of possessory interest under the lease. Because the Court finds Coastal's interest insufficient to support an action for conversion, this Court finds it unnecessary to reach the issues contained in IMC's remaining summary judgment motions.

DONE AND ORDERED.

---

**3.** Coastal argues that the 1976 Settlement Agreement between Coastal and the Trustees "makes it clear that Coastal has a sufficient interest to bring a suit to enforce its rights for conversion" (doc. 654). This Court agrees with Judge Norris's conclusion that the Settlement Agreement reduced Coastal's interest under the lease to that of a "residual royalty right owner" (see doc. 653, attachment B). Contrary to Coastal's contention, there is no language in the Settlement Agreement establishing that Coastal's working interest prior to 1976 was greater than the inchoate right to explore for and produce minerals when found.