## Hicks v. American Natural Gas Company, Appellant.

*Equity—Preliminary injunction—Practice, C. P.*

A preliminary injunction should only be granted where injury to the property of complainant is imminent and if committed irreparable. And it will not generally be awarded where the complainant's right is not clear or, to turn the proposition around, where the wrong is not manifest. Courts of equity invariably on a hearing for preliminary injunction endeavor as far as possible to make such decree, however it may be framed, as will maintain the status quo until final hearing or judgment.

*Equity—Preliminary injunction—Oil and gas lease—Notice—Irreparable injury—Remedy at law—Status quo—Ejectment.*

Where a vendee of land takes title without actual personal notice of an unrecorded oil and gas lease, but it appears that his .agent who made the contract was on the land, saw the plant of the lessees in operation, and was informed by the vendor of the lease, and it also appears that the lease provided for an accurate system of measuring the gas, and that the lessees were operating one well and were about to drive another, the vendee is not entitled to a preliminary injunction against the lessees because (1) his right was not clear, as he was bound by the knowledge of his agent; (2) he showed no irreparable damage; (3) the preliminary injunction would not maintain the status quo, and (4) the exclusive remedy was at law by an action of ejectment.

Argued Nov. 4, 1903. Appeal, No. 1, Oct. T., 1904, by defendant, from decree of C. P. Westmoreland Co., Equity Docket No. 475, awarding preliminary injunction in case of Alfred Hicks v. American Natural Gas Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court.

*Error. assigned* was the decree of the court.

*W. A. Griffith*, of *Lyon, McKee & Mitchell*, with him *V. E. Williams, A. M. Sloan* and *W. F. Wegley*, for appellant.—A preliminary injunction will not be granted in the absence of irreparable injury to the complainant: New Boston Coal & Mining Co. v. Pottsville Water Co., 54 Pa. 164; Hespenheide's App., 4 Penny. 71; Gilfillan v. Grier, 145 Pa. 317.

Especially will the injunction be refused in such case, where great damage or inconvenience would be caused to the respondent or the public by the granting thereof, or where the complainant has been guilty of laches : Cutler v. Egge, 170 Pa. 239 ; New Boston Coal & Mining. Co. v. Pottsville Water Co., 54 Pa. 164; Raub Coal Co. v. Waddell, 7 Kulp, 282; Richard's App., 57 Pa. 105; Denehey v. Harrisburg, 2 Pearson, 330.

Plaintiff had notice of the lease: Jaques v. Weeks, 7 Watts, 261; Daniels v. Davison, 16 Ves. 249; Hottenstein v. Lerch, 104 Pa. 454; Sailor v. Hertzog, 4 Wh. 259.

It is the duty of purchasers of real estate to make inquiry respecting the rights of parties in possession, and failing to do so, they are affected with constructive notice of such facts as would have come to their knowledge in the proper discharge of that duty ; Maul v. Rider, 59 Pa. 167 ; Hill v. Epley, 31 Pa. 331 ; Tanney v. Tanney, 159 Pa. 277; State Bank v. Carr, 15 Pa. Superior Ct. 346 ; Jamison v. Dimock, 95 Pa. 52 ; Sill v. Swackhammer, 103 Pa. 7 ; Lord's Appeal, 105 Pa. 451; Rowe v. Ream, 105 Pa. 543; Marsh v. Nelson, 101 Pa. 51; Memmert v. McKeen, 112 Pa. 315 ; D. & H. Canal Co. v. Hughes, 183 Pa. 66.

*Cyrus E. Woods,* with him *Paul H. Gaither,* for appellee, cited on the question of notice: Billington v. Welsh, 5 Binn. 129 ; Hodge v. Amerman, 2 Atl. Repr. 257 ; Phillipsburg Savings Bank's App., 10 W. N. C. 265 ; Meehan v. Williams, 48 Pa. 238.

OPINION BY MR. JUSTICE DEAN, January 4, 1904 :

The defendant obtained a grant from Peter A. and Margaret Stewart on the 14th of May, 1902, of all the oil and gas under their farm, consisting of 189 acres in Westmoreland county. The grant was in writing duly executed and acknowledged by the parties to it. It stipulated that the gas company should have the right at all times of ingress and egress to drill and operate for oil and gas upon the farm, with the right to conduct all operations, lay all pipes, erect such buildings and tanks as were necessary for the production and transportation of oil and gas—no well to be drilled nearer than

200 feet from the house. Provision was made for prompt payment of the consideration, and for forfeiting the contract if default were made. In August, 1902, defendant went upon the premises and commenced drilling a natural gas well; it erected a derrick eighty feet high, twenty-four feet square at the base, an engine house 125 feet long, five feet wide and twelve feet high, with belt connecting the engine with the derrick. A well was then drilled 2,700 feet deep and gas struck on the 18th of November, 1902. Defendant then connected the well by pipes with its mains on the other side of the Kiskiminitas river. The gas company in the following year removed its machinery and derrick a short distance from the first well and commenced drilling another; this was about July, 1903. Previous to this, however, on the 12th of May, 1903, the plaintiff sent his agent, John Taylor, to the Stewarts, who solicited an option for the purchase outright of the farm from which the oil and gas had been granted to defendant. Taylor obtained a sixty day option for the price of $75,000; before the expiration of the option, Hicks elected to purchase, and took, on the 3d of July, 1903, an absolute deed for the farm, and four days thereafter had it recorded. The oil and gas company did not leave its contract for record until August 3, 1903, thirty days afterwards. There was no reservation of the oil and gas in the deed from the Stewarts to Hicks, and of course, from the record, there was no notice to Hicks of the land being subject to the prior grant. When the oil and gas company commenced its second well, Hicks, averring that he was an innocent purchaser of the land without notice of the incumbrance and that he had paid the money, prayed the court below for a preliminary injunction restraining defendant from in anyway interfering with him in the ownership, possession or use of the farm, and further that the contract be annulled.

Defendant filed no formal answer but took testimony at the hearing for a preliminary injunction, which was treated by the court below and the parties as its answer. It set up as a defense actual notice of the qualified possession by defendant from plaintiff, by the grant of the oil and gas under the farm; that without this, the operations of defendant were on the land in full view of the agent when he took the option and of

Hicks when he afterwards took the deed, and, therefore, knowledge should·be implied.

There was quite a full hearing of the evidence by the learned judge of the court below who awarded a preliminary injunction restraining defendant from in anyway entering upon said land or interfering with plaintiff in the ownership, possession or use thereof. We now have this appeal by defendant assigning for error the decree of the court.

It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity. We therefore content ourselves here with a statement of the rules which should govern courts in granting or withholding preliminary injunctions, and advert very briefly to the testimony.

All the text books agree that a preliminary injunction should only be granted where injury to the property of complainant is imminent and if committed irreparable. And it will not generally be awarded where the complainant's right is not clear or, to turn the proposition around, where the wrong is not manifest. Courts of equity invariably, on a hearing for preliminary injunction, endeavor as far as possible to make such decree, however, it may be framed, as will maintain the status quo until final hearing or judgment.

Under the undisputed facts in this. case, how could it be said that plaintiff's right appeared clear at the preliminary hearing? But one fact alone makes in his favor: by his deed from the Stewarts he holds the legal and equitable title to the land. On its face this carries the right to the exclusive possession, for under the recording acts, the oil and gas company, as against plaintiff, had constructively no right whatever, while as against the Stewarts, the common grantors, the company's right was clear; but the company averred that plaintiff had full notice, before he took his option and accepted his deed, that already the Stewarts had made the grant to it, and that it was in possession under that restricted right.

To sustain these averments, whatever may be the nature of the evidence at a trial at law, yet at the preliminary hearing it was not vague or uncertain. There was upon the land in full view, a large derrick eighty feet in height; a building 125 feet long and twelve feet high connected with it. Taylor, the agent of Hicks, who took the option in his own name admits that he examined the farm and knew its boundaries before taking the option; he saw the derrick and Stewart called his attention to it but he, Taylor, made no further inquiry about it.

Taylor was called by plaintiff, and was his most important witness. Whatever knowledge the agent who conducted the negotiations and took the option on the farm had, must be imputed to Hicks. Plaintiff then knew when the option was taken and deed accepted, that there was upon the farm a high derrick and large building for drilling purposes; somebody was producing oil or gas from the land; Stewart was an old farmer cultivating the surface; it is not even pretended that any one supposed he was operating the derrick and drill; it was there by consent of the owner, Stewart, under some kind of license or contract with him. This plaintiff, by the admissions of his agent, Taylor, was presumed to know. The slightest inquiry from Stewart would have disclosed the name of the owner of the derrick, and inquiry from him or Stewart would have disclosed the formal particulars of the grant antedating the option and deed. If plaintiff desired to put himself in the position of an innocent purchaser who had paid the purchase money without notice of any prior grant, inquiry became a duty on his part at this juncture in the negotiations. Thus far we have not noticed any testimony except that of plaintiff. It seems to us, he wholly fails to make out what the books call a "clear right" such as would entitle him to a preliminary injunction.

But a reference to Stewart's testimony still further weakens plaintiff's case. Taylor was there with Stewart to negotiate the option; they walked together over the farm talking about the proposed purchase; Stewart testifies: "I told him there was a lease on the place as we came down the road past it and that that derrick was the fruit of the lease. I told him that I was telling him that as a matter of form as I supposed he knew it already." Without discussing at present the exact

nature of the property or possession passing from the Stewarts to defendant by the grant of the oil and gas, the evidence of a qualified or restricted possession for the purpose of drilling and operating gas wells is far from what is called merely doubtful; it is so significant as to approach, at least, the unquestionable. The familiar rule so often cited is announced in Jaques v. Weeks, 7 Watts, 261, indeed it is much older than that case, is then pointedly applicable to these facts: "The general doctrine is, that whatever puts a party upon inquiry, amounts· in judgment of law to notice provided the inquiry becames a duty . . . . and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. Notice of a deed is notice of its contents, and notice to an agent is notice to his principal."

The Stewarts could not have maintained a bill for a preliminary injunction, in the face of their grant; Hicks, because he had notice of it, stands in their shoes. It is therefore a barrier to him.

Not only should the preliminary injunction have been refused because, on the evidence at that stage, plaintiff's right was not at all clear, but it also should have been refused because he showed no irreparable damage. His use of the surface continued as undisturbed as Stewart enjoyed it; by the contract defendant must pay all damages occasioned by ingress or egress; it must keep at least 200 feet distant from the house; it must pay not less than $50.00 quarterly whether gas be produced or not; the quantity of gas produced is to be measured by an accurate system and to be paid for quarterly. If the contract with the Stewarts therefore be void, if it be eventually determined that it conferred no right on defendant, the measurement will accurately show just how much gas defendant got during the interval, between the ending of Stewart's title and final judgment. Surely, it would not then be a very difficult matter to make plaintiff whole because of the alleged appropriation of the gas under his land.

But further, the preliminary injunction does not maintain the status quo. The defendant has sunk one costly well, has cased it and has piped the gas therefrom to its mains; is now supplying its patrons, the public; was about to sink another well under its contract with the Stewarts; has all its costly

machinery ready for operation at the proper point. Its entire business is suddenly stopped by the strong arm of the chancellor. By delaying injunction until final hearing, plaintiff practically would have lost nothing ; defendant substantially, loses everything it hoped to gain by its contract and all it has gained by its large expenditure at that location. Its customers cannot wait a year or more for the event of a lawsuit; it must at once seek another field to obtain its product, involving perhaps the duplication of its structure and machinery. The plaintiff thus accomplishes at once and for the time being, all he could have got by final decree. It is extremely doubtful if that decree were in defendant's favor, if it could ever be put in the same situation as before the injunction. Therefore the preliminary injunction was improvident.

It is further argued by appellant, that this court is without jurisdiction because this is what is known as an ejectment bill, an attempt to oust defendant from possession of land by a suit in equity while the remedy is at law by ejectment. To this appellee replies, in a supplemental paper-book, citing a number of our own decisions to the effect, that an oil or gas contract or lease is an incorporeal hereditament, that is, "A right issuing out of a thing corporate, or concerning, or annexed to or exercisable within the same. It is no part of the corporate thing ; that remains as perfect after the right has issued or has been exercised as before."

Undoubtedly, several of our cases hold, that an oil or gas contract in the usual form is an incorporeal hereditament, and ejectment cannot be maintained thereon. But whether it is the subject of ejectment by him who has the title of the corporate thing, after the right has issued out of the thing corporate, depends on the special situation of the incorporeal hereditament in the particular case at the date of the suit; if, to enjoy the right or exercise it, an actual though qualified or restricted possession has been taken, then the owner of the thing corporate, who denies the existence of the right, or alleges it to have been lost or forfeited, can maintain ejectment against him who has the restricted possession under the incorporeal hereditament. We will not say that ejectment would in all cases be the only remedy of the owner, for there might be rare cases where equity would take jurisdiction, but

we do say, unhesitatingly, that in the case before us, ejectment was his only appropriate remedy.

And the cases cited by counsel for appellee in their supplemental paper-book in no wise antagonize but support this view. Funk v. Haldeman et al., 53 Pa. 229 is the first and leading case cited. In that case Funk filed his bill to restrain defendants from trespassing on land leased exclusively to him for oil purposes by McElheny the owner; the defendants alleged that Funk, the first lessee, had forfeited his right and, that at all events his right was not exclusive. The court below held that Funk had forfeited his right and granted an injunction. He appealed to this court, which in an elaborate opinion by WOODWARD, C. J., reversed the decree and awarded an injunction, holding, that Funk had not violated his covenants whereby a forfeiture had been incurred, and that if he had, " A chancellor would be likely to send the grantors into a court of law to enforce the forfeiture by ejectment, for equity does not ordinarily enforce forfeiture." It will be noticed that this case was not between the oil lessee and the owner, but between two rival claimants of the oil, yet it is more than intimated, that if Funk had forfeited his lease, and the defendants under their contract had succeeded to his right, then, they would have stood in the shoes of the owner and Funk being in possession, ejectment would have been their remedy. This is the first case in this state in which the nature of the estate acquired by a lease of the exclusive right to search and drill for oil was passed upon by this court. And although it is, somewhat reluctantly, held to be an incorporeal hereditament, yet it is in substance, decided that if the suit had been between the owner of the land and Funk the owner of the incorporeal hereditament or license, the owner's remedy to oust Funk would have been by ejectment. This case was decided in 1866, a very few years after the great utility of natural oil and its immense value as an article of commerce had been demonstrated; its extent under the earth, the means of discovery and methods of production were still but imperfectly known. It may be doubted whether now after forty years more of knowledge, if the question were first before us, we would hold that a grant of exclusive right to the oil under a defined tract of land, coupled with the ex-

clusive right to portions of the surface for production and transportation, is an incorporeal hereditament. But in Funk v. Haldemann we did so classify it, and have followed that decision in many cases since. Having due regard, therefore, to the rule of stare decisis we must continue to so classify such contracts.

The next case cited is Union Petroleum Co. v. Bliven Petroleum Co., 72 Pa. 173, an action on the case for damages between two rival companies for the oil rights under the same land. It was held that the action would lie for the interference with and obstruction of the right of one by the other, although the right was an incorporeal hereditament. The case was tried in the court below, by Judge Trunkey, afterwards a justice of this court. In his charge he says, " If he (McClintock, the owner of the land) were asserting, or attempting to enforce his rights to the possession of the soil, his remedy would be ejectment or trespass." The charge as a whole, although also relating to other facts, was approved by this court in an opinion by Sharswood, J.

The case of Carnegie Nat. Co. v. Phila. Co., 158 Pa. 317, also cited by appellee, is a case of two warring lesees each claiming the right to the gas under the same tract of land and the main question was, as to whether the one company by the failure to keep its covenants had forfeited its rights and thereby the other company had acquired the exclusive right. It was held in that case that the right of each company was an incorporeal hereditament and that equity had jurisdiction on the facts of that case. It by no means holds that equity had ex clusive jurisdiction.

We have found no case and none has been cited, which holds that the remedy of the owner of the thing corporate against the unlawful possession by the owner of the incorporeal hereditament must oust the trespasser by injunction. The other cases cited involved trespasses or acts in their nature tortious, in which cases, it has been decided, that for them actions at law are often inadequate remedies. In the case before us, the possession was initiated by virtue of a positive contract with the owners of the fee. It was actual and peaceable. It is not alleged, nor could it be, that defendant's entry was in the beginning wrongful ; all that is alleged is, that during that possession

plaintiff obtained a superior right by deed without notice of defendant's right; the very case for ejectment for it is strictly a possessory action. Although in practice it has somewhat changed, its foundation and sole purpose were originally to determine the right of possession; it is still fully adequate to that purpose on these facts.

So that supposing defendant after taking its restricted possession had erected its buildings and structures, had commenced as it did, to pipe, transport and sell large quantities of gas, and had then refused to pay; and then the grantors, as provided by the contract, had declared it forfeited; then their right of re-entry on the land where defendant had erected its derricks and buildings would have been clear, and if possession had been refused, their right could have been enforced by ejectment. It would have been the only appropriate remedy. The plaintiff by his deed, if he had notice of the lease, has no higher or other right than his grantors.

Assume that this contract was a mere license, then as long as defendant remained outside, did not have full control or possession of the hereditament, it could not under the authorities cited bring ejectment. But when it has actually entered upon the land under its contract its position is entirely different; it then has actual peaceable possession. It could not bring an ejectment to be put in possession but the owner could and must bring one to put it out. The reason given for barring the licensee in several of the cases is that if he recovered, the sheriff could not under a writ of habere facias put him in possession without interfering with the rightful possession of the owner; but the reason wholly disappears when the grantee is in possession and the owner denies his right to be upon his land under any contract. The nature of this possession is aptly stated by MITCHELL, C. J., in Westmoreland, etc., Nat. Gas Co. v. DeWitt, 130 Pa. 235:

"And equally so as between lessor and lessee in the present case, the one who controls the gas has it in his grasp, so to speak, is the one who has possession in the legal as well as in the ordinary sense of the word. Tested by these principles, there is not the slightest doubt that the possession of the gas as well as the right to it under this lease, was in the complainants when the bill was filed. They had put down a well, which

had tapped the gas-bearing strata and it was the only one on the land. They had it in their control, for they had only to turn a valve to have it flow into their pipe ready for use. The fact that they did not keep it flowing, but held it generally in reserve, did not affect their possession any more than a mill owner affects the continuance of his water right when he shuts his sluice gates."

We think plaintiff in this case on this contract and under the evidence had a full and complete remedy at law by ejectment. Therefore, for all the reasons given, the decree of the court below is reversed and for the last one, the bill is dismissed at the costs of appellee.