J-A19003-15

2015 PA Super 215

| | |
|---|---|
| LISA MARTINEZ, ELIZABETH SIEBER, JENNIFER DARAZIO AND DEBRA TINKEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHRISTIAN FINANCIAL MANAGEMENT CORP., INDIA CHRISTIAN AND COREY CHRISTIAN | |
| v. | |
| ACCESSABILITIES, INC. AND COMMUNITY RESOURCES FOR INDEPENDENCE | |
| APPEAL OF:  CHRISTIAN FINANCIAL MANAGEMENT CORP., INDIA CHRISTIAN AND COREY CHRISTIAN | No. 766 WDA 2014 |

Appeal from the Order Entered April 30, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-018763

| | |
|---|---|
| LISA MARTINEZ, ELIZABETH SIEBER, JENNIFER DARAZIO AND DEBRA TINKEY, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CHRISTIAN FINANCIAL MANAGEMENT CORP., INDIA CHRISTIAN AND COREY CHRISTIAN | |
| v. | |
| ACCESSABILITIES, INC. AND COMMUNITY RESOURCES FOR | |

J-A19003-15

INDEPENDENCE

APPEAL OF:  CHRISTIAN FINANCIAL
MANAGEMENT CORP., INDIA CHRISTIAN            No. 1445 WDA 2014
AND COREY CHRISTIAN


Appeal from the Order Entered August 20, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-12-018763


BEFORE:  BENDER, P.J.E., JENKINS, J., and MUSMANNO, J.

OPINION BY BENDER, P.J.E.:                    **FILED OCTOBER 07, 2015**

Christian Financial Management Corp. (CFM), India Christian, and Corey Christian (collectively, Appellants) appeal from the orders entered April 30, 2014, and August 20, 2014, which granted the class action plaintiffs' motion for preliminary injunction, enjoining Appellants from issuing amended W-2 statements for Tax Year 2012 until further order of the trial court.[1]  We affirm.

CFM provided payroll services for attendant caregivers, who provided care to disabled persons receiving Medicaid benefits administered by the Pennsylvania Department of Public Welfare.  Its responsibilities included withholding payroll taxes, making tax payments to the appropriate taxing authorities, and issuing paychecks to the caregivers.  Sometime in 2012, following an influx of several thousand new accounts, discrepancies began to

_____

[1] An appeal may be taken as of right from an order that grants an injunction. **See** Pa.R.A.P. 311(a)(4).  The above-listed dockets were consolidated *sua sponte* by this Court on October 30, 2014.  **See infra** at n.4.

- 2 -

appear in CFM payroll services. Thereafter, caregivers Lisa Martinez, Elizabeth Sieber, Jennifer Darazio, and Debra Tinkey, on behalf of themselves and others similarly situated (collectively, Appellees), commenced this class action in October 2012, alleging violations of the Pennsylvania Wage Payment and Collections Law,[2] unjust enrichment, breach of contract – third party beneficiary, and breach of fiduciary duty.

In December 2012, the trial court appointed a receiver to protect and administer the records and assets of CFM, including the accurate reporting and payment of tax obligations.[3] *See* Trial Court Order, 12/13/2012 (appointing receiver); Trial Court Order, 01/10/2013 (regarding 2012 W-2 statements). In February 2013, the receiver issued W-2 statements to former CFM caregivers, thus reporting estimated 2012 gross earnings and tax obligations for those caregivers. *See* Receiver's Final Report, 08/22/2013. However, according to the receiver, CFM records were in disarray, and complete, accurate payment records could not be re-assembled. *Id.* Regarding tax obligations, the receiver paid approximately $4.5 million in pre-receivership federal, state, and local taxes, but estimated CFM owed approximately $2 million in additional, pre-receivership, employee-related taxes. *Id.* According to the receiver, this discrepancy

---

[2] 43 P.S. §§ 260.1 – 260.9a.

[3] Incidentally, in January 2013, the Pennsylvania Department of Public Welfare transferred CFM caregivers to another financial services company.

arose due to CFM's failure to withhold properly the tax obligations incurred by its caregivers. *Id.* Following submission of the receiver's final report, the trial court terminated the receivership. *See* Order of Court, 08/26/2013. At no point prior to the termination of the receivership did CFM object to the receiver-issued W-2 statements.

In January 2014, Appellants submitted an expert report (Krieger Report), challenging the methodology applied by the receiver to generate 2012 W-2 statements. *See* Krieger Report, 01/16/2014. Based upon the Krieger Report, CFM filed amended IRS Forms 940 (regarding federal unemployment tax) and 941 (regarding employer's federal tax return). CFM also informed the trial court of its intention to issue amended 2012 W-2 statements. Nevertheless, Appellants acknowledged that the amended W-2 statements remained inaccurate. *See* Krieger Report at 32 (acknowledging that its analysis did not consider potential tax exemptions based on family relationship).

In April 2014, Appellees filed a motion for preliminary and permanent injunctive relief, seeking to enjoin CFM from issuing amended 2012 W-2 statements. The trial court conducted a hearing on April 30, 2014, at the conclusion of which, the court granted Appellees' motion for a preliminary injunction.

Appellants timely appealed, and filed two, court-ordered Pa.R.A.P. 1925(b) statements. The trial court issued responsive opinions.[4]

Appellants raise the following issues:

1. Does federal law preempt a state court from enjoining [CFM] from issuing amended W-2 tax statements?

2. Did sufficient evidence exist to support the trial court's entry of an injunction preventing [CFM] from issuing amended W-2 tax statements?

Appellants' Brief at 4.

Initially, Appellants contend that federal law preempts the trial court from enjoining CFM from issuing amended W-2 tax statements, thus depriving the court of subject matter jurisdiction. *See, e.g.*, *Werner v. Plater-Zyberk*, 799 A.2d 776, 787 (Pa. Super. 2001) ("Federal preemption is a jurisdictional matter for a state court because it challenges subject matter jurisdiction and the competence of the court to reach the merits of

_____

[4] The trial court issued its order granting Appellees' motion from the bench on April 30, 2014. Appellants timely appealed on May 9, 2014, docketed in this Court at No. 766 WDA 2014. The trial court entered a written order, again granting Appellees' motion, on May 21, 2014. On June 4, 2014, Appellants filed a court-ordered Rule 1925(b) statement. The trial court issued a responsive opinion on August 20, 2014. However, following its opinion, the trial court entered another order. The new order again granted Appellees' motion for preliminary injunctive relief, but clarified its previous ruling, enjoining Appellants from issuing amended W-2 statements "until further order on this matter." Trial Court Order, 08/20/2014. The modified order prompted Appellants to file a second notice of appeal on September 5, 2014, docketed here at No. 1445 WDA 2014, and a second, court-ordered Rule 1925(b) statement. The trial court re-issued its opinion on December 10, 2014. This Court *sua sponte* consolidated these appeals. *See* Order of Court, 10/30/2014.

the claims raised."). Appellants raise two arguments in support of this contention.

First, Appellants suggest that the federal Anti-Injunction Act, 26 U.S.C. § 7421(a), expressly preempts the trial court from enjoining CFM from issuing amended W-2 tax statements. *See Werner*, 799 A.2d at 787 ("Express preemption arises when there is an explicit statutory command that state law be displaced."). As noted by Appellants, the Anti-Injunction Act (AIA) prohibits any court from entertaining an action filed with "the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). According to Appellants, this prohibition extends to those activities that may *culminate* in the assessment or collection of taxes, citing in support *Blech v. United States*, 595 F.2d 462, 466 (9th Cir. 1979).[5]

Second, Appellants also contend that the injunction is preempted because it conflicts with Congressional objectives, manifest in the Internal Revenue Code. *See Werner*, 799 A.2d at 787 (noting that conflict preemption occurs when it is impossible to comply with both state and federal law or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). Appellants note CFM's obligation to report accurately federal withholding taxes and to correct perceived errors in its reporting. *See* Appellants' Brief at 24-30

---

[5] Appellant also cites to several, sister-state court decisions.

(citing federal statutes and case law, detailing its obligations under the Internal Revenue Code).

Here, Appellants seek to issue amended, 2012 W-2 statements that comport with the tax analysis set forth in its expert report but are contrary to the tax analysis previously adopted by the receiver. Appellants suggest that amended W-2 statements would more accurately report caregivers' wages and the taxes withheld from them. Moreover, according to Appellants, the issuance of amended W-2 statements would facilitate the "assessment" and "collection" of federal taxes. Thus, Appellants conclude, we should vacate the injunction.

We disagree. Recently, the United States Supreme Court has addressed the proper interpretation of the terms "assessment" and "collection," relevant to the Federal Tax Code. *See Direct Mktg. Ass'n v. Brohl*, 135 S. Ct. 1124 (2015).[6] In *Brohl*, a trade association brought a federal suit against the Colorado Department of Revenue, asserting that certain notice and reporting requirements were unconstitutional. *Id.* at 1128. The federal district court enjoined the requirements, pending

_____

[6] At issue in *Brohl* was the Tax Injunction Act (TIA), not the AIA. *See* 28 U.S.C. § 1341 (depriving federal courts of jurisdiction to "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law"). However, the Supreme Court "assume[-d] that words used in both Acts are generally used in the same way" and "discern[-ed] the meaning of the terms in the AIA by reference to the broader Tax Code." *Brohl*, 135 S. Ct. at 1129. Thus, the Supreme Court's interpretation is instructive.

outcome of the underlying litigation. *Id.* at 1128-29. On appeal, the United States Court of Appeals for the Tenth Circuit reversed, concluding that the district court was without jurisdiction pursuant to the TIA; however, the Supreme Court granted certiorari and reversed the judgment of the circuit court. *Id.* at 1129.

The Court observed that "the Federal Tax Code has long treated information gathering as a phase of tax administration procedure that occurs *before* assessment, levy, or collection." *Id.* (emphasis added). Thus, the Court concluded, the injunction did not "restrain" the assessment or collection of taxes. *Id.* at 1132 (adopting a narrow definition of the word "restrain," meaning, "to prohibit from action"). According to the Supreme Court:

> [A]dopting a narrower definition is consistent with the rule that jurisdictional rules should be clear. The question—at least for negative injunctions—is whether the relief to some degree stops "assessment, levy or collection," not whether it merely inhibits them. The Court of Appeals' definition of "restrain," by contrast, produces a vague and obscure boundary that would result in both needless litigation and uncalled-for dismissal, all in the name of a jurisdictional statute meant to protect state resources.
>
> Applying the correct definition, a suit cannot be understood to "restrain" the "assessment, levy or collection" of a state tax if it merely inhibits those activities.

*Id.* at 1133 (internal citations and quotation marks omitted).

In our view, W-2 statements are sufficiently similar to the notice and reporting requirements at issue in *Brohl*. A W-2 statement, issued by an employer, merely reports an employee's wages and those taxes withheld by

the employer over the course of the preceding year. *See* 26 U.S.C. § 6051; *see also, generally, Bachner v. Comm'r*, 81 F.3d 1274, 1280 (3d Cir. 1996) ("W-2 information is not independently sufficient for tax-computational purposes."). Thus, even were we to accept Appellants' position, that amended statements would more accurately report its former caregivers' wages and taxes, the trial court's injunction merely postpones or inhibits the assessment and collection of the caregivers' taxes, it does not restrain assessment or collection. Accordingly, pursuant to *Brohl*, we conclude that the trial court was not jurisdictionally barred from enjoining Appellants from issuing amended W-2 statements for Tax Year 2012.

On the merits, Appellants also contend that there was insufficient evidence to support the trial court's injunction. Our standard of review, though nominally characterized as an abuse of discretion, is highly deferential:

> We recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the trial court.
>
> This Court set out the reasons for this highly deferential standard of review almost a hundred years ago:
>
> > It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—

> hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

***Summit Towne Centre v. Shoe Show of Rocky Mount, Inc.***, 828 A.2d 995 (Pa. 2003) (internal punctuation and formatting modified; internal citations omitted) (quoting ***Hicks v. Am. Natural Gas Co.***, 57 A. 55, 55-56 (Pa. 1904)).

We have reviewed the trial court's analysis. Following a hearing, the court concluded that an injunction was appropriate. ***See*** Notes of Testimony (N.T.), 07/01/2014, at 115-18; ***see also*** Trial Court Opinion, 08/20/2014, at 5-8 (analyzing the six prerequisites set forth in ***Warhime v. Warhime***, 860 A.2d 41, 46-47 (Pa. 2004)); Trial Court Opinion, 12/10/2014, at 5-8 (same). In particular, we note the court's reliance upon evidence that Appellants' proposed, amended W-2 statements *remain inaccurate*. ***See, e.g.***, N.T. at 113-114 (referencing Krieger Report at 32). Based upon this, we conclude that the court had reasonable grounds for enjoining the issuance of amended W-2 statements, at least until the Internal Revenue Service makes a determination as to their validity and accuracy. ***See*** Trial Court Opinion, 08/20/2014, at 8 (noting that the IRS will ultimately resolve this dispute). Accordingly, we discern no abuse of discretion and affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2015