J-A30038-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE MONONGALIA COUNTY COAL COMPANY, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WEISS WORLD, L.P. AND CHRISTOPHER P. WEISS, | : | |
| | : | |
| Appellants | : | No.  962 WDA 2018 |

Appeal from the Order Entered June 15, 2018
in the Court of Common Pleas of Greene County
Civil Division at No(s): AD 558-2017

BEFORE:  SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED MAY 07, 2019**

Weiss World, L.P. and Christopher P. Weiss (collectively, Appellants) appeal from the order entered on June 15, 2018, which granted the preliminary injunction filed by The Monongalia County Coal Company (Mon Coal).  Upon review, we affirm.

We provide the following background.  Appellants are the owners of a 109-acre property (the Property) located off Jollytown Road in Greene County, Pennsylvania.  The Property was purchased in 1971 by the Weiss family, and has been in the family ever since.[1]  At the time of purchase, there was a large

---

* Retired Senior Judge assigned to the Superior Court.

[1] At some point, the Property was transferred to a legal entity known as Weiss World, L.P.  Christopher Weiss is the general partner of that entity.  His siblings, including Jennifer Weiss, are limited partners.

farmhouse on the Property, which the family regularly used until an arsonist burned it down in 2009. Although the farmhouse has not been rebuilt since that time, Appellants continue to use the Property as a retreat.

In 1911, ownership of the coal underneath the Property was severed from the surface estate, and the subsurface rights were acquired by Consolidation Coal Company in 1957.[2] Mon Coal acquired those rights in 2013.

In August 2016, Mon Coal notified Appellants of its intent to mine the coal under the Property and adjoining property. Due to safety and ventilation requirements, Mon Coal needs 2.7 acres on the surface of the Property to construct a sediment pond and storage area.

Mon Coal and Appellants were unable to reach an agreement as to this Property, so on July 18, 2017, Mon Coal filed a complaint and motion for preliminary injunction against Appellants to obtain the necessary land on the Property to create the sediment pond and storage area. In September 2017, the parties reached an agreement (the 2017 Agreement), whereby Appellants permitted the creation of the sediment pond and storage area on 2.7 acres of the Property, but required Mon Coal to utilize Jollytown Road to construct and

---

[2] "Pennsylvania law recognizes three discrete estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support. Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." **Consolidation Coal Co. v. White**, 875 A.2d 318, 326 (Pa. Super. 2005) (internal citations omitted).

access the sediment pond and storage area. Mon Coal paid Appellants $5,000 as consideration for the 2017 Agreement.

Mon Coal then proceeded to go through the administrative permitting process to construct the sediment pond and storage area and learned that the Pennsylvania Department of Environmental Protection (PADEP) would not permit Mon Coal to use Jollytown Road to construct and access the sediment pond and storage areas. Mon Coal had believed initially that it would be permitted to use Jollytown Road because it had been previously permitted to do so for another project. However, since that initial permit, new homes had been built nearby, which, according to the PADEP, required those homeowners to sign waivers. Mon Coal was unable to obtain waivers from the homeowners, and therefore it was unable to obtain a permit from the PADEP to use Jollytown Road as provided for in the 2017 Agreement.

Thus, Mon Coal went back to Appellants in order to negotiate the creation of an access road across the Property.[3] The parties were unable to reach a new agreement, and on May 4, 2018, Mon Coal filed against Appellants a second motion for preliminary injunction and a motion for leave to amend the complaint. The relief sought by Mon Coal in this preliminary injunction

---

[3] Mon Coal acknowledged that it could have also, or even in addition to, sought a final determination from the PADEP, which would likely have been a denial, and then appealed that denial to the Environmental Hearing Board. However, Mon Coal believed that pursuing that route would have been more time consuming and caused other issues, so it instead decided to go back to Appellants to get permission to create a new access road. **See** N.T., 5/25/2018, at 85.

- 3 -

was to prohibit Appellants "from interfering with [Mon Coal's] reasonable access to the [] Property in order to construct an access road so that it may immediately construct the [ventilation shaft] and ancillary facilities." Second Motion for Preliminary Injunction, 5/4/2018, at ¶ 44.

A hearing was held by the trial court on these motions on May 25, 2018. At that hearing, Mon Coal presented the testimony of Kevin Rakes, manager of engineering for Mon Coal's northern West Virginia operations. He explained the importance of a ventilation shaft, and further testified about why this shaft was needed at this time and location. In addition, Rakes pointed out that in order to find a new location and get a permit for a new shaft, it takes many years. Rakes testified that without this shaft, mining will have to cease in May of 2020 because the mine would be vented inadequately at that point. N.T., 5/25/2018, at 45. If the mine has to shut down, 400 employees, 100 of whom live in Greene County, will be out of work. *Id*. at 27. In addition, the mine shutting down would cause Greene County to lose $2 million in revenue on an annual basis. *Id*.

The trial court also heard testimony from Kim Betcher, who testified regarding the PADEP's denial of Mon Coal's permit. She disagreed with the PADEP's decision, but stated that Mon Coal "just [doesn't] have the time or an appealable action to take it in front of the [Environmental Hearing Board] so [they're] searching other routes because the shaft has to be installed." *Id*. at 90.

- 4 -

In addition, Jennifer Weiss testified about the history of the Property in her family, and her rationale for entering into the 2017 Agreement. She stated that the reason Appellants entered into the 2017 Agreement in the first place was based upon Mon Coal's representation that "they didn't need any more from us … they don't need any other access." *Id*. at 129. She further acknowledged that the location of the proposed access road did not run across what Appellants consider "the homestead," or the area of the Property they occupy when they visit.[4] *Id*. at 141.

At the close of the hearing, the trial court listed the six factors Mon Coal must satisfy in order to be granted a preliminary injunction. *See id*. at 157 ("[L]et's go down through these elements though."). After the trial court listed each factor, Mon Coal argued to the trial court how it satisfied that factor. *Id*. at 157-162. The trial court provided additional time for the parties to come to a new agreement, and the parties informed the trial court they were unable to do so. Therefore, on June 15, 2018, the trial court entered an order granting Mon Coal's motion for leave to amend the complaint as well as Mon Coal's second motion for preliminary injunction.

In its order and opinion, the trial court cited to the factors necessary for the granting of a preliminary injunction and concluded that "there is no

---

[4] Mon Coal presented Appellants three separate options for an access road. Options 1 and 2 would have crossed the homestead area. Option 3, the only option Mon Coal was pursuing at the time of the hearing, did not traverse that area.

adequate remedy at law available to [Mon Coal], the actual owner of the coal underneath the Property, and that [Mon Coal] will suffer immediate and irreparable harm should the preliminary injunction be denied." Trial Court Opinion, 6/15/2018, at 3-4 (unnecessary capitalization omitted).

Appellants timely filed a notice of appeal from the order granting the preliminary injunction.[5] The trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, and Appellants complied. On July 20, 2018, the trial court entered an order stating that it was relying on its June 15, 2018 opinion. Order, 7/20/2018.

In considering Appellants' claims that the trial court erred in granting the preliminary injunction, we are mindful of the following.

> As an initial matter, … in general, appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. We have explained that [the] standard of review [] to be applied within the realm of preliminary injunctions [is] as follows:
>
> > [W]e recognize that on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court].
>
> ***Roberts v. Board of Dirs. of Sch. Dist.***, [] 341 A.2d 475, 478 ([Pa.] 1975). This Court set out the reasons for this highly deferential standard of review almost a hundred years ago:

---

[5] An order granting a preliminary injunction is appealable as of right pursuant to Pa.R.A.P. 311(a)(4).

- 6 -

It is somewhat embarrassing to an appellate court to discuss the reasons for or against a preliminary decree, because generally in such an issue we are not in full possession of the case either as to the law or testimony—hence our almost invariable rule is to simply affirm the decree, or if we reverse it to give only a brief outline of our reasons, reserving further discussion until appeal, should there be one, from final judgment or decree in law or equity.

*Hicks v. Am. Natural Gas Co.*, [] 57 A. 55, 55–56 ([Pa.] 1904). Thus, in general, appellate inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" support the trial court's disposition of the preliminary injunction request. *See Roberts*, 341 A.2d at 478.

*Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000-01 (Pa. 2003) (some citations, quotation marks, and footnotes omitted).

On appeal, Appellants first claim that the trial court "abused its discretion when it granted [Mon Coal's] motion for preliminary injunction without first finding that [Mon Coal] established six 'essential prerequisites' necessary to be afforded injunctive relief." Appellants' Brief at 13.

The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

***SEIU Healthcare Pa. v. Commonwealth***, 104 A.3d 495, 501-502 (Pa. 2014).

In this case, despite acknowledging there were six prerequisites to consider, ***see*** Trial Court Opinion, 6/15/2018, at 4, the trial court offered a specific conclusion only as to the first of those prerequisites, that Mon Coal "will suffer immediate and irreparable harm." ***Id***. at 5. In addition, the trial court concluded that "there is no adequate remedy at law available to [Mon Coal]." ***Id***. Thus, in attempting to determine whether any "apparently reasonable grounds" exist for the trial court's granting of the preliminary injunction, our review is significantly hindered by the incomplete analysis presented in the trial court's opinion. On the other hand, it is Mon Coal's position that a written opinion is not necessary, and that this Court can and should look to the entire record to determine if "any apparently reasonable grounds support the trial court's disposition of the preliminary injunction request." ***Summit Town Ctr., Inc***., 828 A.2d at 1001 (internal quotation marks omitted); Mon Coal's Brief at 17-18.

We begin by examining relevant case law. In ***Citizens Bank of Pa. v. Myers***, 872 A.2d 827 (Pa. Super. 2005), this Court affirmed a trial court order granting a preliminary injunction in favor of Citizens and against the defendants in order to freeze the defendants' National City bank accounts, which allegedly contained funds they misappropriated from Citizens. "Citizens sought, *inter alia*, equitable relief, in the form of an injunction to freeze the

defendants' bank accounts." *Id*. at 831. Citizens also obtained an emergency *ex parte* special injunction to freeze the defendants' bank accounts in order to prevent dissipation of assets.

A hearing was held on the preliminary injunction on December 19, 2003. At that hearing, the defendants orally moved to dismiss the injunction. The trial court reserved ruling on the motions, and permitted the hearing to move forward. At that point, the defendants agreed "that they would stipulate to Citizens' offers of proof of its witnesses' testimony for the purpose of the trial court's resolution of their motions to dismiss, thus dispensing of the need for witness testimony." *Id*. at 832. Counsel for Citizens then set forth the testimony it would have presented at the hearing. On December 22, 2003, the trial court denied the motions to dismiss the injunction, which left in effect the injunction.

One defendant[6] appealed this ruling, arguing *inter alia*, "this Court cannot conduct an adequate review of the grant of the preliminary injunction without a Rule 1925(a) opinion … from the trial court." *Id*. at 837. This Court pointed out that our standard of review permits this Court to "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." *Id*., citing **Warehime v. Warehime**, 860 A.2d 41, 46 (Pa. 2004). This Court concluded that "the proposed testimony offered by

---

[6] The other defendant filed a suggestion of bankruptcy, which stayed his appeal.

Citizens amply illustrates that there were apparently reasonable grounds for the trial court's decision to grant a preliminary injunction" and concluded that remand was not necessary under the circumstances of this case. *Id*.

Based on the foregoing, while we certainly do not condone the trial court's failure to address specifically all six factors in its opinion, we conclude that its failure to do so does not require remand.  Thus, as in *Citizens Bank*, we will "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." 872 A.2d at 837. Therefore, Appellants' first issue does not entitle them to relief.

We now consider each essential prerequisite in turn, beginning with Appellants' claim that the trial court abused its discretion in concluding that Mon Coal would be irreparably harmed. *See* Appellants' Brief at 19-21. According to Mon Coal, the irreparable harm is clear – without the ability to create this access road, the mine will shut down. N.T., 5/25/2018, at 157.

Appellants do not dispute this conclusion, but contend that any harm to Mon Coal is not being caused by Appellants, but rather is due to the PADEP's refusing to permit Mon Coal to use Jollytown Road to access the Property. Appellants' Brief at 19.  That may be true, but that is not the question that faces either the trial court or this Court.  The question facing the trial court was whether there would be irreparable harm that could not be compensated by damages.  "An injury is regarded as 'irreparable' if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary

standard." ***The York Grp., Inc. v. Yorktowne Caskets, Inc.***, 924 A.2d 1234, 1242 (Pa. Super. 2007) (quoting ***Kessler v. Broder***, 851 A.2d 944, 951 (Pa. Super. 2004)). As the trial court pointed out, the injury here is that the mine will go out of business. N.T., 5/25/2018, at 158. Thus, it would be impossible for Mon Coal to calculate with certainty the losses to its business, the losses to its employees, and losses to Greene County if mining were to cease. Accordingly, we conclude that reasonable grounds existed for the trial court's conclusion that Mon Coal would suffer irreparable harm thereby establishing the first prerequisite.

We next consider whether the trial court abused its discretion in determining that "greater injury would result from refusing an injunction than from granting it and concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings." ***The York Grp.***, ***Inc.***, 924 A.2d at 1244. As discussed *supra*, the injury to Mon Coal is obvious from the record. The injury to Appellants, however, is not. The testimony at the hearing revealed an understandable attachment and affinity to the Property by Appellants. However, as Jennifer Weiss testified, the proposed route for the access road does not traverse any area of the Property actually used by Appellants or any area where a farmhouse would be built or rebuilt. ***See*** N.T., 5/25/2018, at 141. Thus, we conclude there were reasonable grounds to determine that "greater injury would result from

refusing an injunction than from granting it." ***The York Grp.***, ***Inc.***, 924 A.2d at 1244.

We consider the next two prerequisites together. The first is whether granting "a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct." ***Id.*** The next is whether Mon Coal has shown "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, [] that it is likely to prevail on the merits." ***Id***. at 1241.

To understand these prerequisites in the context of this case, we review the law regarding property rights. There is no dispute that Mon Coal owns the mineral rights to the Property, and Appellants own the surface rights to the Property. "Under Pennsylvania law, the mineral estate is the dominant estate and entails the right to use of as much surface land as reasonably necessary to extract minerals." ***Minard Run Oil Co. v. U.S. Forest Serv.***, 670 F.3d 236, 243–44 (3d Cir. 2011), *as amended*, (Mar. 7, 2012). Thus, it is Mon Coal's position that, as the "owner of coal and mining rights" in the Property, it is permitted to exercise its rights as such. Mon Coal's Brief at 38. Therefore, Mon Coal argues that the preliminary injunction was proper because it restored the parties to their original positions, and Appellants are not likely to prevail on the merits. Mon Coal's Brief at 23, 38-39.

It is Appellants' position that the 2017 Agreement altered Mon Coal's status such that "it required written consent from [Appellants] to enter any

other portion of the [Property.]" Appellants' Brief at 22. In other words, Appellants argue that the 2017 Agreement was the "status [of the parties] as it existed immediately prior to the alleged wrongful conduct." *The York Grp., Inc.*, 924 A.2d at 1244. Furthermore, Appellants argue because Appellants and Mon Coal entered into the 2017 Agreement, Mon Coal cannot establish a clear right to relief and will not succeed on the merits. Appellants Brief at 15-19.

"To establish a clear right to relief, the party seeking an injunction need not prove the merits of the underlying claim, but need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." *SEIU*, 104 A.3d at 506. Here, the aforementioned arguments, combined with our examination of the record, confirm that there is a legal dispute regarding how the 2017 Agreement affects Mon Coal's rights to the Property. Thus, Mon Coal has satisfied its burden to show that "substantial legal questions must be resolved." *Id*. Moreover, based on the foregoing dispute, and the controversy ongoing since 2016, it was reasonable for the trial court to determine that the timeframe that immediately "preceded the pending controversy" is the timeframe prior to entry of the 2017 Agreement. *The York Grp., Inc.*, 924 A.2d at 1244. Accordingly, it was not an abuse of discretion for the trial court to conclude that Mon Coal established both of these prerequisites.

We next consider Appellants' claim that Mon Coal "did not establish [that the preliminary injunction] was reasonably suited to abate the supposedly offending activity." Appellants' Brief at 23. Here, the only activity Mon Coal requested to be abated was the ability of Appellants to interfere with Mon Coal's accessing the Property. The preliminary injunction, which ordered Appellants to refrain from acting as such, was certainly reasonably calculated to do that.

The final prerequisite for a trial court to consider is whether Mon Coal established "that the injunction will not adversely affect the public interest." **The York Grp., Inc.**, 924 A.2d at 1245. Appellants argue that the public interest is served by enforcing valid contractual provisions of the 2017 Agreement. Appellants' Brief at 24. However, as discussed *infra*, the enforceability of those provisions involves substantial legal questions which are more appropriate to be considered at the final injunction stage. Moreover, Mon Coal has demonstrated that the preliminary injunction could benefit the public by keeping the mine open in Greene County. Thus, we discern no error by the trial court.

Having reviewed the six essential prerequisites, we conclude "that there were apparently reasonable grounds for the trial court's decision to grant a preliminary injunction." **Citizens Bank**, 872 A.2d at 837. Accordingly, we will not reverse the order of the trial court.

Appellants next set forth two arguments regarding the 2017 Agreement. First, Appellants argue that the trial court erred "when it allowed [Mon Coal] to access the [Property] to build an access road despite the clear and unambiguous terms of the 2017 Agreement to the contrary." Appellants' Brief at 26. Appellants also contend the trial court erred "and engendered significant confusion regarding each parties' obligations and responsibilities when it granted [Mon Coal's motion for preliminary injunction] without determining whether, and to what extent, the 2017 Agreement continues to govern the parties' relationship with respect to [Mon Coal's] mining operations." *Id*. at 31.

These issues, however, were neither necessary to resolve nor the type to be resolved at the preliminary injunction stage; rather, these defenses can and should be considered and resolved at a hearing on a permanent injunction.

> [I]n order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law.

*Buffalo Twp. v. Jones*, 813 A.2d 659, 663 (Pa. 2002) (internal citations and quotation marks omitted). Accordingly, the issue of what effect, if any, the 2017 Agreement has on the parties can and should be resolved at a hearing on a permanent injunction.

- 15 -

Because the trial court did not commit an error of law or abuse its discretion in granting a preliminary injunction in favor of Mon Coal and against Appellants, we affirm the order of the trial court.

Order affirmed.

Judge Shogan joins the memorandum.

Judge Kunselman joins and files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/2019